FEDERAL TRADE COMMISSION ET AL. *v.*
GROLIER INC.

No. 82–372.   Argued March 29, 1983—Decided June 6, 1983

White, J., delivered the opinion of the Court, in which Burger, C. J., and Marshall, Powell, Rehnquist, Stevens, and O'Connor, JJ., joined. Brennan, J., filed an opinion concurring in part and concurring in the judgment, in which Blackmun, J., joined, *post*, p. 28.

*Deputy Solicitor General Geller* argued the cause for petitioners. With him on the briefs were *Solicitor General Lee, Assistant Attorney General McGrath, Samuel A. Alito, Jr.,* and *Leonard Schaitman.*

*Daniel S. Mason* argued the cause for respondent. With him on the brief were *Frederick P. Furth, Michael P. Lehmann,* and *Richard M. Clark.*

Justice White delivered the opinion of the Court.

The Freedom of Information Act (FOIA), 5 U. S. C. § 552, mandates that the Government make its records available to the public. Section 552(b)(5) exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." It is well established that this exemption was intended to encompass the attorney work-product rule. The question presented in this case is the extent, if any, to which the work-product component of Exemption 5 applies when the litigation for which the requested documents were generated has been terminated.

In 1972, the Federal Trade Commission undertook an investigation of Americana Corp., a subsidiary of respondent Grolier Inc. The investigation was conducted in connection with a civil penalty action filed by the Department of Justice.[1] In 1976, the suit against Americana was dismissed with prejudice when the Government declined to comply with a District Court discovery order. In 1978, respondent filed a request with the Commission for disclosure of documents concerning the investigation of Americana.[2] The Commission initially denied the entire request, stating that it did not have any information responsive to some of the items and that the remaining portion of the request was not specific enough to permit the Commission to locate the information without searching millions of documents contained in investigatory files. The Commission refused to release the few items that were responsive to the request on the basis

---

[1] *United States* v. *Americana Corp.*, Civ. No. 388–72 (NJ). Americana was charged with violation of a 1948 cease-and-desist order in making misrepresentations regarding its encyclopedia advertisements and door-to-door sales.

[2] By letter to the Commission, respondent requested the following:

"1) All records and documents which refer or relate to a covert investigation of Americana Corporation and/or Grolier Incorporated, which was made in or about April 1973, by a Federal Trade Commission consumer protection specialist named Wendell A. Reid; and

"2) All records and documents which refer or relate to any covert investigation, made by any employee of the Federal Trade Commission, of any of the following companies: [listing 14 companies, including respondent and Americana Corporation].

"3) All records and documents which refer or relate to any covert investigation, made by any employee of the Federal Trade Commission, of any person, company or other entity." App. 15–16.

"Covert investigation" was defined by respondent to be "any investigation of which the subject entity was not notified in advance and prior to acts taken pursuant to such investigation." *Id.*, at 16. Respondent later abandoned its requests for any documents other than those related to the Americana investigation, defined in the first category of its request.

that they were exempt from mandatory disclosure under § 552(b)(5).[3]

Pursuant to the Commission's Rules, respondent appealed to the agency's General Counsel. Following review of respondent's request, and after a considerable process of give and take, the dispute finally centered on seven documents.[4] Following *in camera* inspection, the District Court determined that all the requested documents were exempt from disclosure under § 552(b)(5), either as attorney work product, as confidential attorney-client communications, or as internal predecisional agency material. On appeal, the Court of Appeals held that four documents generated during the Americana litigation could not be withheld on the basis of the work-product rule unless the Commission could show that "litigation related to the terminated action exists or potentially exists."[5] 217 U. S. App. D. C. 47, 50, 671 F. 2d 553, 556 (1982).

The Court of Appeals reasoned that the work-product rule encompassed by § 552(b)(5) was coextensive with the work-product privilege under the Federal Rules of Civil Proce-

---

[3] The requested documents are subject to mandatory disclosure as "identifiable records" under § 552(a)(3), unless covered by a specific exemption. In this case, the Commission claims exemption only under § 552 (b)(5), which provides:

"This section does not apply to matters that are—

.          .          .          .          .

"(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency . . . ."

[4] The Commission released a number of documents after respondent filed this suit. Respondent abandoned its claim for many others. See n. 2, *supra*.

[5] Respondent withdrew its claim for disclosure of one of the seven documents. The Court of Appeals affirmed the District Court's judgment that another was exempt as an attorney-client communication, 217 U. S. App. D. C., at 48, n. 3, 671 F. 2d, at 554, n. 3, and held that still another was clearly a predecisional document not subject to disclosure under Exemption 5, *id.*, at 51, 671 F. 2d, at 557. These rulings are not at issue here.

dure. A requirement that documents must be disclosed in the absence of the existence or potential existence of related litigation, in the Court of Appeals' view, best comported with the fact that the work-product privilege is a qualified one. We granted the Commission's petition for certiorari, 459 U. S. 986 (1982). Because we find that the Court of Appeals erred in its construction of Exemption 5, we reverse.

Section 552(b) lists nine exemptions from the mandatory disclosure requirements that "represen[t] the congressional determination of the types of information that the Executive Branch must have the option to keep confidential, if it so chooses." *EPA* v. *Mink*, 410 U. S. 73, 80 (1973). The primary purpose of one of these, Exemption 5, was to enable the Government to benefit from "frank discussion of legal or policy matters." S. Rep. No. 813, 89th Cong., 1st Sess., 9 (1965). See H. R. Rep. No. 1497, 89th Cong., 2d Sess., 10 (1966). In keeping with the Act's policy of "the fullest responsible disclosure," S. Rep. No. 813, at 3, Congress intended Exemption 5 to be "as narro[w] as [is] consistent with efficient Government operation." *Id.*, at 9. See H. R. Rep. No. 1497, at 10.

Both the District Court and the Court of Appeals found that the documents at issue were properly classified as "work product" materials, and there is no serious argument about the correctness of this classification.[6] "It is equally clear that Congress had the attorney's work-product privilege specifically in mind when it adopted Exemption 5," the privilege being that enjoyed in the context of discovery in civil litigation. *NLRB* v. *Sears, Roebuck & Co.*, 421 U. S. 132, 154–155 (1975); H. R. Rep. No. 1497, at 10; S. Rep. No. 813, at 2.

---

[6] Respondent makes some assertions concerning the ethical conduct of the Commission in continuing its investigations after the *Americana* suit had been instituted and claims that the work-product rule would not apply to documents containing evidence of unethical conduct. Respondent did not raise this issue before the District Court or the Court of Appeals and we decline to address it.

24

In *Hickman* v. *Taylor*, 329 U. S. 495, 510 (1947), the Court recognized a qualified immunity from discovery for the "work product of the lawyer"; such material could only be discovered upon a substantial showing of "necessity or justification." An exemption from discovery was necessary because, as the *Hickman* Court stated:

> "Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served." *Id.*, at 511.

The attorney's work-product immunity is a basic rule in the litigation context, but like many other rules, it is not self-defining and has been the subject of extensive litigation.

Prior to 1970, few District Courts had addressed the question whether the work-product immunity extended beyond the litigation for which the documents at issue were prepared. Those courts considering the issue reached varying results.[7] By 1970, only one Court of Appeals had addressed the issue. In *Republic Gear Co.* v. *Borg-Warner Corp.*, 381 F. 2d 551, 557 (CA2 1967), the Court of Appeals held that documents prepared in connection with litigation that was on

---

[7] See *Honeywell, Inc.* v. *Piper Aircraft Corp.*, 50 F. R. D. 117 (MD Pa. 1970); *Bourget* v. *Government Employees Ins. Co.*, 48 F. R. D. 29 (Conn. 1969); *Stix Products, Inc.* v. *United Merchants & Mfrs., Inc.*, 47 F. R. D. 334 (SDNY 1969); *LaRocca* v. *State Farm Mutual Automobile Ins. Co.*, 47 F. R. D. 278 (WD Pa. 1969); *Kirkland* v. *Morton Salt Co.*, 46 F. R. D. 28 (ND Ga. 1968); *Chitty* v. *State Farm Mutual Automobile Ins. Co.*, 36 F. R. D. 37 (EDSC 1964); *Insurance Co. of North America* v. *Union Carbide Corp.*, 35 F. R. D. 520 (Colo. 1964); *Hanover Shoe, Inc.* v. *United Shoe Machinery Corp.*, 207 F. Supp. 407 (MD Pa. 1962); *Thompson* v. *Hoitsma*, 19 F. R. D. 112 (NJ 1956); *Tobacco and Allied Stocks, Inc.* v. *Transamerica Corp.*, 16 F. R. D. 534 (Del. 1954).

appeal were not subject to discovery in a related case. The court also noted that there was potential for further related litigation. Thus, at the time FOIA was enacted in 1966, other than the general understanding that work-product materials were subject to discovery only upon a showing of need, no consensus one way or the other had developed with respect to the temporal scope of the work-product privilege.

In 1970, the Federal Rules of Civil Procedure were amended to clarify the extent to which trial preparation materials are discoverable in federal courts. Rule 26(b)(3) provides, in pertinent part:

> "[A] party may obtain discovery of documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."

Rule 26(b)(3) does not in so many words address the temporal scope of the work-product immunity, and a review of the Advisory Committee's comments reveals no express concern for that issue. Notes of Advisory Committee on 1970 Amendments, 28 U. S. C. App., pp. 441–442. But the literal language of the Rule protects materials prepared for *any* litigation or trial as long as they were prepared by or for a party to the subsequent litigation. See 8 C. Wright & A. Miller, Federal Practice and Procedure § 2024, p. 201 (1970). Whatever problems such a construction of Rule 26(b)(3) may engender in the civil discovery area, see *id.*, at 201–202, it provides a satisfactory resolution to the question whether

work-product documents are exempt under the FOIA. By its own terms, Exemption 5 requires reference to whether discovery would normally be required during litigation *with the agency*. Under a literal reading of Rule 26(b)(3), the work product of agency attorneys would not be subject to discovery in subsequent litigation unless there was a showing of need and would thus fall within the scope of Exemption 5.

We need not rely exclusively on any particular construction of Rule 26(b)(3), however, because we find independently that the Court of Appeals erred in construing Exemption 5 to protect work-product materials only if related litigation exists or potentially exists. The test under Exemption 5 is whether the documents would be "routinely" or "normally" disclosed upon a showing of relevance. *NLRB* v. *Sears, Roebuck & Co.* 421 U. S., at 148–149. At the time this case came to the Court of Appeals, all of the Courts of Appeals that had decided the issue under Rule 26(b)(3) had determined that work-product materials retained their immunity from discovery after termination of the litigation for which the documents were prepared, without regard to whether other related litigation is pending or is contemplated.[8] In addition, an overwhelming majority of the Federal District Courts reporting decisions on the issue under Rule 26(b)(3) were in accord with that view.[9] "Exemption 5 incorporates

---

[8] See *In re Murphy*, 560 F. 2d 326, 334 (CA8 1977); *United States* v. *Leggett & Platt, Inc.*, 542 F. 2d 655 (CA6 1976), cert. denied, 430 U. S. 945 (1977); *Duplan Corp.* v. *Moulinage et Retorderie de Chavanoz*, 487 F. 2d 480, 483–384 (CA4 1973). See also *In re Grand Jury Proceedings*, 604 F. 2d 798, 803 (CA3 1979) (work-product privilege continues at least when subsequent litigation is related). Cf. *Kent Corp.* v. *NLRB*, 530 F. 2d 612 (CA5) (work-product privilege does not turn on whether litigation actually ensued), cert. denied, 429 U. S. 920 (1976).

[9] See *In re Federal Copper of Tennessee, Inc.*, 19 B. R. 177 (Bkrtcy. MD Tenn. 1982); *In re International Systems & Controls Corp. Securities Litigation*, 91 F. R. D. 552 (SD Tex. 1981); *United States* v. *Capitol Service, Inc.*, 89 F. R. D. 578 (ED Wis. 1981); *In re LTV Securities Litigation*, 89 F. R. D. 595 (ND Tex. 1981); *First Wisconsin Mortgage Trust* v. *First*

the privileges which the Government enjoys under the relevant statutory and *case law* in the pretrial discovery context." *Renegotiation Board* v. *Grumman Aircraft Engineering Corp.*, 421 U. S. 168, 184 (1975) (emphasis added). Under this state of the work-product rule it cannot fairly be said that work-product materials are "routinely" available in subsequent litigation.

The Court of Appeals' determination that a related-litigation test best comported with the qualified nature of the work-product rule in civil discovery—a proposition with which we do not necessarily agree—is irrelevant in the FOIA context. It makes little difference whether a privilege is absolute or qualified in determining how it translates into a discrete category of documents that Congress intended to exempt from disclosure under Exemption 5. Whether its immunity from discovery is absolute or qualified, a protected document cannot be said to be subject to "routine" disclosure.

Under the current state of the law relating to the privilege, work-product materials are immune from discovery unless the one seeking discovery can show substantial need in connection with subsequent litigation. Such materials are thus not "routinely" or "normally" available to parties in litigation and hence are exempt under Exemption 5. This result, by establishing a discrete category of exempt information, implements the congressional intent to provide "workable" rules. See S. Rep. No. 813, at 5; H. R. Rep. No. 1497, at 2.

Respondent urges that the meaning of the statutory language is "plain" and that, at least in this case, the requested

*Wisconsin Corp.*, 86 F. R. D. 160 (ED Wis. 1980); *Panter* v. *Marshall Field & Co.*, 80 F. R. D. 718 (ND Ill. 1978); *United States* v. *O. K. Tire & Rubber Co.*, 71 F. R. D. 465 (Idaho 1976); *SCM Corp.* v. *Xerox Corp.*, 70 F. R. D. 508 (Conn.), appeal dism'd, 534 F. 2d 1031 (1976); *Burlington Industries* v. *Exxon Corp.*, 65 F. R. D. 26 (Md. 1974). See also *Hercules, Inc.* v. *Exxon Corp.*, 434 F. Supp. 136 (Del. 1977) (protected when cases are closely related in parties or subject matter); *Ohio-Sealy Mattress Mfg. Co.* v. *Sealy, Inc.*, 90 F. R. D. 45 (ND Ill. 1981) (protected in later related litigation).

documents must be disclosed because the same documents were ordered disclosed during discovery in previous litigation. It does not follow, however, from an ordered disclosure based on a showing of need that such documents are routinely available to litigants. The logical result of respondent's position is that whenever work-product documents would be discoverable in any particular litigation, they must be disclosed to anyone under the FOIA. We have previously rejected that line of analysis. In *NLRB* v. *Sears, Roebuck & Co., supra,* we construed Exemption 5 to "exempt those documents, and only those documents, *normally* privileged in the civil discovery context." 421 U. S., at 149. (Emphasis added.) It is not difficult to imagine litigation in which one party's need for otherwise privileged documents would be sufficient to override the privilege but that does not remove the documents from the category of the *normally* privileged. See *id.,* at 149, n. 16.

Accordingly, we hold that under Exemption 5, attorney work product is exempt from mandatory disclosure without regard to the status of the litigation for which it was prepared. Only by construing the Exemption to provide a categorical rule can the Act's purpose of expediting disclosure by means of workable rules be furthered. The judgment of the Court of Appeals is reversed.

*It is so ordered.*

JUSTICE BRENNAN, with whom JUSTICE BLACKMUN joins, concurring in part and concurring in the judgment.

The Court rests its judgment on two alternative holdings: one a construction of Federal Rule of Civil Procedure 26(b)(3), *ante,* at 26; the other a more limited holding under Exemption 5 of the Freedom of Information Act (FOIA), 5 U. S. C. § 552(b)(5), *ante,* at 26. I find the latter holding unpersuasive and accordingly would rest exclusively on the former.

## I

I agree wholeheartedly with the Court that Rule 26(b)(3) itself does not incorporate any requirement that there be actual or potential related litigation before the protection of the work-product doctrine applies. As the Court notes, "the literal language of the Rule protects materials prepared for *any* litigation or trial as long as they were prepared by or for a party to the subsequent litigation." *Ante*, at 25. A contrary interpretation such as that adopted by the Court of Appeals would work substantial harm to the policies that the doctrine is designed to serve and protect. We described the reasons for protecting work product from discovery in *Hickman* v. *Taylor*, 329 U. S. 495 (1947):

> "In performing his various duties, . . . it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference . . . . This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways— aptly though roughly termed . . . the 'work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served." *Id.*, at 510–511.

30

The Court of Appeals is doubtless correct in its view that the need to protect attorney work product is at its greatest when the litigation with regard to which the work product was prepared is still in progress; but it does not follow that the need for protection disappears once that litigation (and any "related" litigation) is over. The invasion of "[a]n attorney's thoughts, heretofore inviolate," and the resulting demoralizing effect on the profession, are as great when the invasion takes place later rather than sooner. More concretely, disclosure of work product connected to prior litigation can cause real harm to the interests of the attorney and his client even after the controversy in the prior litigation is resolved. Many Government agencies, for example, deal with hundreds or thousands of essentially similar cases in which they must decide whether and how to conduct enforcement litigation. Few of these cases will be "related" to each other in the sense of involving the same private parties or arising out of the same set of historical facts; yet large classes of them may present recurring, parallel factual settings and identical legal and policy considerations.[1] It would be of substantial benefit to an opposing party (and of corresponding detriment to an agency) if the party could obtain work product generated by the agency in connection with earlier, similar litigation against other persons. He would get the benefit of the agency's legal and factual research and reasoning, enabling him to litigate "on wits borrowed from the ad-

---

[1] It is possible, I suppose, that such suits might be considered "related" in a very broad reading of the Court of Appeals' "related litigation" test; the courts adopting the test have not had occasion to explore its outer boundaries. But this possibility merely reveals a dilemma: If the test is read so broadly as to classify similar but factually unrelated suits as "related," it is virtually no limitation on the work-product doctrine at all, since almost any work-product document otherwise discoverable under Rule 26(b)(1) will have originated in "related" litigation. But to the extent that the "related" test is read any more narrowly than that, it threatens to cause the harm discussed in text. Hence, the test is either harmful or toothless.

versary." *Id.*, at 516 (Jackson, J., concurring). Worse yet, he could gain insight into the agency's general strategic and tactical approach to deciding when suits are brought, how they are conducted, and on what terms they may be settled. Nor is the problem limited to Government agencies. Any litigants who face litigation of a commonly recurring type— liability insurers, manufacturers of consumer products or machinery, large-scale employers, securities brokers, regulated industries, civil rights or civil liberties organizations, and so on—have an acute interest in keeping private the manner in which they conduct and settle their recurring legal disputes. Counsel for such a client would naturally feel some inhibition in creating and retaining written work product that could later be used by an "unrelated" opponent against him and his client. Counsel for less litigious clients as well might have cause for concern in particular cases; fear of even one future "unrelated" but similar suit might instill an undesirable caution, and neither client nor counsel can always be entirely sure what might lie over the horizon. This is precisely the danger of "[i]nefficiency, unfairness[,] . . . sharp practices" and demoralization that *Hickman* warned against.[2]

---

[2] See generally, *e. g.*, *In re Murphy*, 560 F. 2d 326, 333–335 (CA8 1977); *United States* v. *Leggett & Platt, Inc.*, 542 F. 2d 655, 659–660 (CA6 1976); *Duplan Corp.* v. *Moulinage et Retorderie de Chavanoz*, 509 F. 2d 730 (CA4 1974); *Duplan Corp.* v. *Moulinage et Retorderie de Chavanoz*, 487 F. 2d 480 (CA4 1973).

The Court of Appeals reasoned that "[e]xtending the work-product protection only to subsequent related cases best comports with the fact that the privilege is qualified, not absolute." 217 U. S. App. D. C. 47, 50, 671 F. 2d 553, 556 (1982) (footnote omitted). In my view, this mistakes by 180 degrees the significance of the qualified nature of the privilege. As another Court of Appeals has explained:

"Were the work product doctrine an unpenetrable protection against discovery, we would be less willing to apply it to work produced in anticipation of other litigation. But the work product doctrine provides only a qualified protection against discovery . . . ." *Leggett & Platt, supra*, at 660.

Indeed, to the extent that the need for protection of work product does decrease after the end of a suit, that fact might in some cases lower the

I do not understand the Court's holding on this point to be limited to the FOIA context. The Court itself quite accurately characterizes its first holding as a "particular construction of Rule 26(b)(3)." *Ante,* at 26. Indeed, it could hardly do otherwise, since the plain meaning of Exemption 5 is that the scope of the Exemption is coextensive with the scope of the discovery privileges it incorporates. "Exemption 5 . . . exempt[s] those documents, and only those documents, normally privileged in the civil discovery context." *NLRB* v. *Sears, Roebuck & Co.,* 421 U. S. 132, 149 (1975) (footnote omitted). See also *id.,* at 154–155; *Federal Open Market Committee* v. *Merrill,* 443 U. S. 340, 353 (1979); *Renegotiation Board* v. *Grumman Aircraft Corp.,* 421 U. S. 168, 184 (1975); *EPA* v. *Mink,* 410 U. S. 73, 85–86, 91 (1973).[3] Thus, nothing in either FOIA or our decisions construing it authorizes us to define the coverage of the work-product doctrine under Exemption 5 differently from the definition of its coverage that would obtain under Rule 26(b)(3) in an ordinary lawsuit. If a document is work product under the Rule, and if it is an "inter-agency or intra-agency memorandu[m] or lette[r]" under the Exemption, it is absolutely exempt.[4]

threshold for overcoming the work-product barrier. A party seeking discovery of work product must show that "he is unable without undue hardship to obtain the substantial equivalent of the materials by other means," Rule 26(b)(3). What hardship is "undue" depends on both the alternative means available and the need for continuing protection from discovery. See 8 C. Wright & A. Miller, Federal Practice and Procedure § 2024, p. 202 (1970).

[3] But see *Federal Open Market Committee* v. *Merrill,* 443 U. S., at 354: "[I]t is not clear that Exemption 5 was intended to incorporate every privilege known to civil discovery." Of course, it is settled that the Exemption does incorporate the work-product doctrine. *NLRB* v. *Sears, Roebuck & Co.,* 421 U. S., at 154–155.

[4] We held in *Sears* that Exemption 5 does not apply to "final opinions" explaining agency actions already taken or agency decisions already made. *Id.,* at 150–154. The gist of our holding was that such documents are not within any privilege incorporated into Exemption 5—specifically, that they

## II

Since the Court rejects the "related litigation" test under Rule 26(b)(3), and since that holding necessarily governs the application of the work-product doctrine under Exemption 5, it need go no further. The Court proceeds, however, to put forward a second holding directly under FOIA. It reasons that work product generated in connection with a prior, unrelated litigation would not be " 'routinely' available in subsequent litigation," *ante*, at 27, because at the time of the Court of Appeals' decision in this case a majority of federal courts that had decided the issue had rejected the "related litigation" test. *Ante*, at 26–27. This holding apparently would preclude disclosure under FOIA even in a district or circuit where the precedents under Rule 26(b)(3) *do* incorporate the "related litigation" test, since the "majority view" does not depend on the location of the library in which one reads the cases.[5] I grant that uniformity of statutory interpretation is a good thing as a general matter, but I cannot see taking it this far.

I confess that the source from which the Court draws its reasoning is a mystery to me. I know of no other statutory context in which the test of discoverability (or anything else) is not what the *correct* view of the law is, but what the *cur-*

---

are not covered by the Government's executive privilege. *Ibid.* The same would be true of the work-product doctrine; it is difficult to imagine how a final decision could be "prepared in anticipation of litigation or for trial," Rule 26(b)(3). It is also questionable whether such decisions would constitute "inter-agency or intra-agency memorandums or letters," 5 U. S. C. § 552(b)(5).

[5] Presumably, this principle would work in reverse as well. That is, if the settled law of a particular district under Rule 26(b)(3) were that a particular type of document (some sort of investigative report, say) is within the work-product doctrine, but a majority of other courts disagreed, the district court entertaining a FOIA suit would be obliged to follow the majority view and grant disclosure, even though the same document would not be "routinely" disclosed in an ordinary lawsuit in that district.

*rent majority* view is.[6]   Certainly the plain language of the statute is to the contrary; it directs a court to exempt material "which would not be available *by law* to a party . . . in litigation with the agency."   5 U. S. C. § 552(b)(5) (emphasis added).   "By law" presumably means "by the law as correctly construed by the court deciding the case at hand," not "by the law as construed (whether correctly or incorrectly) by a majority of other federal courts."   The Court draws the words "routinely" and "normally" from *Sears, supra,* at 149, and n. 16.   But as a quick perusal of that case reveals, all we were saying there was that once a privilege is held to apply under Exemption 5, it applies absolutely, without regard to whether a party in ordinary discovery might be able to overcome the privilege by some showing of need (an understanding the Court itself embraces, *ante,* at 28).   Alternatively, the Court cites our statement in *Grumman Aircraft, supra,* at 184, that "Exemption 5 incorporates the privileges which the Government enjoys under the relevant statutory and *case law* in the pretrial discovery context."   *Ante,* at 26–27 (emphasis by the Court).   Again, however, the context of the quoted passage makes clear that it refers simply to the extent to which the correct state of the law with regard to a privilege may be embodied in cases interpreting a statute or erecting a nonstatutory privilege.   The scope of the work-product doctrine on a particular disputed point, for example, may be laid out in some binding precedent of the district court entertaining a given FOIA suit, of the court of appeals for that circuit, or of this Court.   Absent a control-

---

[6] One might posit a different sort of incorporation of case law—one in which the relevant law was that in existence in 1966, when FOIA was enacted.   The Court wisely declines to adopt this reading.   There is nothing in FOIA that indicates that it intended to "freeze" the law that existed in 1966; the phrase "available by law" certainly seems to refer to the law at any given time.   Indeed, this reading would preclude recognition of subsequent changes in *statutory* law, such as the adoption of Rule 26(b)(3) in 1970.

ling precedent, of course, the district court would ordinarily look to the decisions of other courts to inform its own construction of Rule 26(b)(3). But nothing in Exemption 5, *Sears*, *Grumman Aircraft*, or anything else of which I am aware authorizes or directs that district court to do anything other than to determine what the legally correct interpretation of the doctrine is, and then to apply it—even if the interpretation it reaches is contrary to that of a majority of other courts. Under the Court's reading of the word "routinely," however, it appears that the district court would be obliged to adhere to the majority view even if there were unmistakable precedent in its circuit construing Rule 26(b)(3) to the contrary. I see no warrant for this astonishing principle. Hence, although I agree with the Court's construction of Rule 26(b)(3), I join only its judgment.