### UNITED TECHNOLOGIES CORP.

v.

### NATIONAL LABOR RELATIONS BOARD.

Civ. No. H–84–968 (MJB).

United States District Court,
D. Connecticut.

March 28, 1985.

Joseph C. Wells, Farmer, Wells, Sibal & Dempsey, Hartford, Conn., for plaintiff.

Margery E. Lieber, Deputy Asst. Gen. Counsel for Special Litigation, Corinna L. Metcalf, N.L.R.B., Washington, D.C., for defendant.

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

BLUMENFELD, Senior District Judge.

*Facts*

This case is an epilogue to an unfair labor practice dispute between the plaintiff, United Technologies Corp. ("UTC"), and a union of security guards ("the Association") at UTC's Hamilton Standard Division. On September 16, 1983, the Association filed an unfair labor practice charge with the National Labor Relations Board ("the Board"), and on March 14, 1984, after an investigation, Peter Hoffman, the Officer-in-Charge of the Board's subregional office in Hartford, issued a complaint against UTC. A hearing before a Board Administrative Law Judge was scheduled for May 7, 1984.

At a trial preparation meeting on April 27, numerous documents were delivered to a Board agent. Included among these documents was a brown manila envelope, delivered by a person whose identity has not been disclosed, containing copies of a memorandum and exhibits which were apparently prepared for use by UTC at the unfair labor practice hearing on May 7. The Board agent examined these documents, then replaced them in the envelope and returned them to the person who had brought them, advising that person that the unauthorized possession of the employer's pretrial memoranda was a particularly serious matter.

On May 1, Officer-in-Charge Peter Hoffman met with Assistant General Counsel Barry J. Kearney and other Board staff to discuss the problems posed by the fact that a Board agent had seen some of UTC's

pretrial documents. Two days later, on May 3, the Association's counsel notified the subregional office that the Association would withdraw the unfair labor practice charge, and on May 11, following approval by the General Counsel's office of the request to withdraw the charge, Mr. Hoffman dismissed the complaint.

The dismissal did not, however, put the matter to rest. Having been advised by Mr. Hoffman that a Board agent had been shown the employer's memorandum and exhibits, UTC sought additional information about the trial preparation meeting at which the event occurred, particularly the identities of the Board agent and the UTC employee who had delivered the documents. When Mr. Hoffman declined to reveal this information, UTC on June 26, 1984 filed a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking permission to inspect and copy all materials in the possession of the Board's Hartford subregional office which related to the unfair labor practice investigation.

Certain documents were provided in response to this request. Notable among these were two memoranda written to the file by a Board agent, which discussed the April 27 meeting. The memoranda were dated May 9 and June 1; the first of these was disclosed with substantial portions, including the identities of UTC employees and Board agents, deleted. The names were also deleted from the second memorandum. By letter to counsel for UTC dated July 12, 1984, Mr. Hoffman contended that the deleted portions of the two memoranda, as well as other material from the Board's files which was withheld, were exempt from disclosure under the FOIA. UTC appealed to the NLRB General Counsel's office, which sustained the appeal in part and denied it in part, and in particular refused to disclose the names sought by UTC.

This lawsuit followed. Although the complaint seeks disclosure of various records, it is clear from the papers filed in connection with the cross-motions for summary judgment now before the court that it

is the memoranda of May 9 and June 1 that are primarily at issue. UTC seeks to compel disclosure of the names of all prospective witnesses for the Board in the unfair labor practice proceeding, and in particular seeks unredacted versions of the two memoranda which will reveal the names of the employees involved in obtaining and delivering UTC's pretrial memorandum and exhibits to a Board agent, and the name of the agent who received them. At a pretrial conference held December 20, 1984, the parties agreed that the case could be decided on motions for summary judgment, and each has submitted a statement of material facts not in dispute. *See* Local Rule of Civil Procedure 9(c). As the two statements are in accord on all the essential facts, the court finds that summary judgment is an appropriate means for disposal of this action. *See* Fed.R.Civ.P. 56.

*Discussion*

■ The FOIA is a statute designed to provide for "open government," by ensuring public access to records of federal government agencies. The Act is "broadly conceived," *EPA v. Mink,* 410 U.S. 73, 80, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973), and its "basic policy" favors disclosure of information, *Department of the Air Force v. Rose,* 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976). However, Congress established nine carefully delineated exemptions from the otherwise mandatory disclosure requirements, in order to protect specified confidentiality and privacy interests of the agencies themselves, their personnel, and persons named in agency records. Where requested material does not fall within one of these nine exemptions, the FOIA requires the agency to make the material available on demand to any member of the general public. *NLRB v. Robbins Tire and Rubber Co.,* 437 U.S. 214, 220–21, 98 S.Ct. 2311, 2316, 57 L.Ed.2d 159 (1978).

The Board asserts that the memoranda at issue in this case are exempt from disclosure under FOIA Exemptions 5, 6, 7(C), and 7(D), 5 U.S.C. § 552(b)(5), (b)(6),

(b)(7)(C), (b)(7)(D).[1] Each claimed exemption will be examined in turn.

### A. *Exemption 5*

■ 5 U.S.C. § 552(b)(5) exempts from disclosure under the FOIA "inter-agency or intra-agency memorandums or letters which would not be available by law to a party ... in litigation with the agency." The exemption encompasses "those documents, and only those documents, normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149, 95 S.Ct. 1504, 1515, 44 L.Ed.2d 29 (1975). Such privileged documents include predecisional internal agency communications reflecting deliberations and recommendations comprising part of the process by which governmental decisions and policies are made, *see id.* at 150–51, 95 S.Ct. at 1516, and also include documents protected by the attorney-client and attorney work product privileges. *Id.* at 154, 95 S.Ct. at 1518. *See also FTC v. Grolier, Inc.*, 462 U.S. 19, 103 S.Ct. 2209, 76 L.Ed.2d 387 (1983); Fed.R.Civ.P. 26(b)(3). The Board's claim that the memoranda at issue here come within Exemption 5 rests on the work product privilege. *See* Defendant's Reply Memorandum at 3.

The Supreme Court first recognized a qualified immunity from discovery for the "work product of the lawyer" in *Hickman v. Taylor*, 329 U.S. 495, 510, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947), and that immunity has been incorporated into Rule 26(b)(3) of the Federal Rules of Civil Procedure. The Board contends that these memoranda constitute privileged work product because they were prepared by a Board agent to reflect events and conversations which took place at meetings held to prepare for the scheduled unfair labor practice hearing; they set forth the content of discussions with counsel for the charging party and witnesses; and they reflect pre-trial considerations and strategies. The disclosed portions of the memoranda indicate that they also reflect the discussion among the Board staff concerning the ethical problems presented by receipt, however momentary, of the purloined UTC documents.

In response, UTC contends that what is actually at issue here is the theft[2] of UTC's attorney work product by persons unknown, and the receipt of that material by a Board agent. In such circumstances, UTC argues, the Board's work product privilege should not be held to shield from disclosure agency records which identify the wrongdoers. Even if those portions of the memoranda which reveal the opinions and recommendations of Board staff are exempt from disclosure, the identities of the employees and the Board agent are alleged to be purely factual matters easily segregable from the privileged portions

---

1. 5 U.S.C. § 552(b) provides, in relevant part, that the following types of records are exempt from disclosure:

 (5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

 (6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

 (7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an

agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel;
 . . . .

2. The Board does not concede that either its agent or the person who delivered the documents were involved in a theft of UTC property. It is possible that the employee-deliverer did not know what was in the envelope, and there is doubt, in any event, that even unredacted versions of the memoranda at issue would in themselves be evidence sufficient to support a criminal conviction of any person named therein. Happily, resolution of this case does not require a determination by this court of whether anyone is criminally liable for the theft of the UTC documents.

(*i.e.,* the opinions and recommendations of Board staff) of the memoranda. *See* Plaintiff's Reply Memorandum at 3.

■ UTC's position, however, confuses the work product privilege with the deliberative process privilege. Under the latter, otherwise nonprivileged factual material cannot be withheld merely because it appears in the same document as privileged material. *EPA v. Mink,* 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973). Under the former, however, if a document is attorney work product the *entire* document is privileged. *See Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); 4 *Moore's Federal Practice* ¶ 26.64[2] (1984) ("Material which is appropriately classified as work product can be divided into two general categories: (1) 'factual' work product, and (2) 'opinion' work product, that is, material containing an attorney's mental impressions, conclusions, opinions, or legal theories.") Since the two Board memoranda are work product, they would normally be privileged in the civil discovery context, and they therefore fall within FOIA Exemption 5. *FTC v. Grolier, Inc.,* 462 U.S. 19, 103 S.Ct. 2209, 76 L.Ed.2d 387 (1983); *NLRB v. Sears, Roebuck & Co.,* 421 U.S. at 149, 95 S.Ct. at 1515.

■ The plaintiff takes the position that the work product privilege should not be used to shield evidence of unethical or criminal activity. But there is neither evidence nor allegation here that the work product itself was created as part of or in aid of an ongoing criminal scheme. *Compare In re John Doe Corp.,* 675 F.2d 482, 492 (2d Cir.1982). And although an attorney's unprofessional conduct might vitiate the privilege, *see Moody v. IRS,* 654 F.2d 795, 800 (D.C.Cir.1981), the court is not persuaded that the conduct of the Board and its agent—in returning the purloined photocopies of plaintiff's documents to their deliverer, subsequently dismissing the unfair

labor practice charge, and notifying the plaintiff that the documents had been received and returned—was unethical or unprofessional.[3] In the context of an unfair labor practice proceeding against an employer, the Board functions as the employer's adversary and the workers' advocate. In such circumstances, it might have been unethical to take advantage of the apparent theft of documents, but it was not unethical to stop short of revealing to the employer the names of employees who might have been involved, in light of the likely consequences to those individuals.

■ UTC also points to the last sentence of 5 U.S.C. § 552(b) which states that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection," contending that the names it seeks should be disclosed under this proviso. The statutory language, however, applies only to records which include portions which are exempt and portions which are not exempt. In the instant case, the two Board memoranda sought by UTC are *wholly* exempt as work product, and the quoted language therefore does not require disclosure of "segregable portions."

### B. *Exemption 7(D)*

5 U.S.C. § 552(b)(7)(D) exempts from disclosure under the FOIA "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would ... disclose the identity of a confidential source...." The Board claims that the identities of potential witnesses in unfair labor practice proceedings, including the person who delivered the documents, are protected under this Exemption. UTC does not dispute that the memoranda are "investigatory records compiled for law enforcement purposes," but contends that the courts have held that potential witnesses in unfair labor practice

---

**3.** It is noteworthy that the Board is not precluded from accepting and using in an unfair labor practice proceeding evidence stolen from the employer by an employee. *NLRB v. South Bay*

*Daily Breeze,* 415 F.2d 360 (9th Cir.1969), *cert. denied,* 397 U.S. 915, 90 S.Ct. 919, 25 L.Ed.2d 96 (1970).

proceedings are not "confidential sources" under the statute.

A source is considered "confidential" under Exemption 7(D) if he/she provides information "under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." Senate Conf.Rep. No. 93–1200, 93d Congress, 2d Sess. (1974), *reprinted in* 1974 U.S.Code Cong. & Ad. News 6267, 6285, 6291 (Conference Committee Report on amendments to FOIA). There are cases holding that a person is not a "confidential source" if he/she might later be called to testify by the agency. *E.g., Nemacolin Mines Corp. v. NLRB*, 467 F.Supp. 521 (W.D.Pa.1979); *Poss v. NLRB*, 565 F.2d 654 (10th Cir.1977). In each of those cases, the court found that there was no "justifiable expectation," *Nemacolin Mines*, 467 F.Supp. at 524, or "absolute guarantee," *Poss*, 565 F.2d at 658, of confidentiality.

This court, however, finds more persuasive the reasoning of the court in *T.V. Tower, Inc. v. Marshall*, 444 F.Supp. 1233 (D.D.C.1978). There, the court refused to apply the "potential witness rule" to force disclosure under the FOIA of the identities of persons interviewed by the Occupational Safety and Health Administration (OSHA) in preparation for administrative proceedings which were later concluded by stipulation, before the witnesses testified. The court found "circumstances from which [an assurance of confidentiality] could be reasonably inferred" in that "the circumstances in which OSHA interviews are conducted necessitate confidentiality because, otherwise, employees, fearing retaliation, would be hesitant to give information adverse to their employers' interests." *Id.* at 1236.

The court went on to state:

The Court will not, however, apply the "potential witness" rule because it does not, in this Court's opinion, comply with the purpose of exemption 7(D), the legislative history of the exemption, and the interpretation courts have given the FOIA. The "potential witness" rule conflicts with the fundamental purpose of exemption 7(D), the enhancement of agencies' enforcement abilities by permitting them to withhold the names of persons who provide enforcement-related information. Agencies, such as OSHA, depend in the execution of their enforcement functions upon information provided by third parties; but such third parties would often be reluctant to provide enforcement-related information if their identities were likely to be made public. For this reason, the "potential witness" rule would have a severe detrimental impact on OSHA's enforcement capability. Because it is necessary in the effective exercise of its enforcement function for the agency to be *able* to call as a witness in an agency proceeding anyone who will strengthen the agency's case, all interviewees could be potential witnesses and OSHA would never be able to give an assurance of confidentiality without having to commit itself at the outset of an investigation as to who will and who won't be called to testify at a subsequent proceeding. The "potential witness" rule would thus require the agency to sacrifice one of its legitimate enforcement tools—*either* the ability to protect the confidentiality of an interviewee's identity *or* the ability to call such an interviewee as a witness—in order to employ another enforcement tool. The Court is confident that Congress did not intend to create such a dilemma for agencies.

*Id.* at 1237 (emphasis in original).

Application of this reasoning to the instant case is buttressed by the Supreme Court's decision in *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978). There, the Court held that FOIA Exemption 7(A), which protects from disclosure "records compiled for law enforcement purposes, ... to the extent that the production of such records would ... interfere with enforcement proceedings," permitted the NLRB to refuse to disclose witnesses' statements in advance of an unfair labor practice hearing. The Court rested its decision in part on the danger that

employers or, in some cases, unions will coerce or intimidate employees and others who have given statements, in an effort to make them change their testimony or not testify at all.... Respondent's argument that employers will be deterred from improper intimidation of employees who provide statements to the NLRB by the possibility of a [NLRA] § 8(a)(4) charge misses the point of Exemption 7(A); the possibility of deterrence arising from *post hoc* disciplinary action is no substitute for a prophylactic rule that prevents the harm to a pending enforcement proceeding which flows from a witness' having been intimidated.

The danger of witness intimidation is particularly acute with respect to current employees—whether rank and file, supervisory, or managerial—over whom the employer, by virtue of the employment relationship, may exercise intense leverage. Not only can the employer fire the employee, but job assignments can be switched, hours can be adjusted, wage and salary increases held up, and other more subtle forms of influence exerted....

Furthermore, both employees and non-employees may be reluctant to give statements to NLRB investigators at all, absent assurances that unless called to testify in a hearing, their statements will be exempt from disclosure until the unfair labor practice charge has been adjudicated.... Since the vast majority of the Board's unfair labor practice proceedings are resolved short of hearing, without any need to disclose witness statements, those currently giving statements to Board investigators can have some assurance that in most instances their statements will not be made public (at least until after the investigation and any adjudication is complete).

*Id.* at 239–41, 98 S.Ct. at 2325–26 (footnotes omitted).

■ Although there is no claim by the Board in the instant case that disclosure would interfere with a pending enforcement proceeding, the rationale of *Robbins Tire* is applicable here. The danger of retaliation and the need for prophylactic protection are undeniably present here as they were in *Robbins Tire.*[4] Similarly, there is a clear danger that the NLRB's enforcement capacity will be adversely affected if confidential status is denied by a per se rule to potential witnesses in unfair labor practice proceedings that are withdrawn before hearing. Whatever might be the appropriate rule with regard to unfair labor practice cases that are actually adjudicated, or where different facts are presented, in the circumstances here UTC should not be able to take advantage of the withdrawal of the unfair labor practice charge to compel disclosure of the identities or statements of those who might have testified at a hearing which was never held, where UTC could not have obtained pre-hearing disclosure of the same information.[5]

---

**4.** The court will take judicial notice that the conflict between the Association and UTC has evidently been a protracted and bitter one, having generated a Board representation case, an unfair labor practice complaint, the instant lawsuit, and another action pending before this court, *Austin v. UTC,* Civil No. H–84–1146. The apparent intensity of the dispute adds weight to the inference that employer retaliation is likely if potential witnesses' names are disclosed.

**5.** Two of the cases cited by UTC for the proposition that Exemption 7(D) does not permit nondisclosure after an unfair labor practice proceeding has been resolved are simply not on point. In *Associated Dry Goods v. NLRB,* 455 F.Supp. 802 (S.D.N.Y.1978), Exemption 7(D) was held inapplicable on the explicit grounds that the labor force involved was small (only 21 employees), and "virtually all of the names of the witnesses were revealed to the employer along with the substance of the witnesses' testimony." 455 F.Supp. at 814. Moreover, the request for documents in *Associated Dry Goods* was made some two and one-half years after the underlying unfair labor practice case was settled, and the party requesting documents was not the employer (and hence was not in a position to retaliate against the employee witnesses).

In *Deering Milliken, Inc. v. Irving,* 548 F.2d 1131 (4th Cir.1977), Exemption 7(D) was held inapplicable on the ground that the Board had made no express or implied assurance of confidentiality to persons who had made statements or provided information. Moreover, the employer in *Deering Milliken* sought information

This reasoning applies to the employees who were allegedly involved in the theft of documents as well as to the other potential witnesses. These employees had reason to believe that the Board would keep their identities in confidence, even if they overstepped the bounds of allowable conduct during a labor dispute. Should their identities be disclosed now, there can be no doubt that they would be exposed to the danger of employer retaliation even in the absence of proof sufficient to support a criminal conviction. The possibility of subsequent unfair labor practice proceedings is not likely to deter the employer from such retaliatory conduct. As in *Robbins Tire*, therefore, a prophylactic decision which prevents disclosure of these identities is preferable to *post hoc* disciplinary action.

I hold, therefore, that FOIA Exemption 7(D) authorizes the Board to withhold from disclosure the names of the UTC employees who provided information or made statements to the Board's investigators or other agents, including the employees allegedly involved in the theft of UTC prehearing documents, since an assurance of confidentiality could be reasonably inferred from the circumstances in which they gave information to the Board.

### C. *Exemptions 6 and 7(C)*

In view of the preceding discussion and holdings with regard to Exemptions 5 and 7(D), it is unnecessary to rule on the Board's contention that the information sought by UTC is also exempt from disclosure under Exemptions 6 and 7(C).

### D. *Waiver*

UTC contends that the Board waived any claim of privilege against disclosure of the names UTC seeks when the Board revealed those names to counsel for the Association. Why, asks UTC, was the Board willing to disclose more information to the Association than to the Association's adversary, and what legitimate governmental purpose was served by such discriminatory disclosure?

In response, the Board claims that under the circumstances presented here there was no waiver. Since the Association was the charging party before the Board, the Association and the Board shared common interests and were aligned together as UTC's adversaries in the unfair labor practice proceeding. The disclosure was made in the course of discussion of the ethical considerations raised by the Board agent's receipt of UTC's pretrial documents.

 It is clear that the Exemption 7(D) privilege against disclosure can be waived only by the person to whom confidentiality was promised. *Radowich v. U.S. Attorney*, 658 F.2d 957 (4th Cir.1981). Moreover, the Exemption 5 work product privilege is not automatically waived by disclosure of the work product to a third party. Courts considering whether the work product privilege has been waived have looked to whether the transferor and transferee share "common interests" in litigation, and to whether the disclosure is consistent with "maintaining secrecy against opponents." *United States v. American Telephone and Telegraph Co.*, 642 F.2d 1285, 1299 (D.C.Cir.1980). In view of the common interest shared by the Board as prosecutor, and the Association as charging party, in prosecuting the unfair labor practice case, I hold that the disclosure of information to counsel for the Association did not constitute a waiver of any privilege against disclosure under the FOIA.

---

related to a back pay proceeding, in which "[e]mployees are not ordinarily susceptible to employer pressure.... The underlying unfair labor practice controversy has already been resolved, and all that remains is the largely objective task of ascertaining the amount of back pay that is due." 548 F.2d at 1135.

The circumstances in the instant case are quite different. Here, the underlying unfair labor practice charge was withdrawn, not resolved by adjudication or settlement. The names of potential witnesses were never disclosed to the employer. If their identities are revealed, the potential witnesses may well be exposed to employer pressure or retaliatory conduct. And of course there is no claim here that the employer seeks the information merely in order to ascertain an amount of back pay due its employees.

*Conclusion*

██ For obvious reasons, UTC would like to identify the employees who were involved in the delivery of company documents to the NLRB. UTC would also undoubtedly like to identify those members of the Association whose pro-union sympathies were sufficiently strong that they made statements to Board agents investigating an unfair labor practice charge. But the disclosure of this sort of information is not what was contemplated by the FOIA. That legislation was designed to promote openness in government, and to ensure that government misconduct could not long remain hidden. *See Robbins Tire,* 437 U.S. at 242, 98 S.Ct. at 2326; H.R.Rep. No. 93–876, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.Code Cong. & Ad. News 6267, 6268–69 (House Report on FOIA amendments). It was not intended to allow employers to command the government's assistance in disciplining employees or to enlist federal agencies or federal courts in enforcing state criminal law against employees who are alleged to be thieves.

For all the foregoing reasons, the Board's motion for summary judgment is granted, and UTC's motion for summary judgment is denied.

SO ORDERED.