STATE OF TEXAS, Plaintiff–Appellant
Cross–Appellee,

v.

INTERSTATE COMMERCE COMMIS-
SION, Defendant–Appellee
Cross–Appellant.

No. 88–1223.

United States Court of Appeals,
Fifth Circuit.

Nov. 29, 1989.

Opinion on Reconsideration
Jan. 25, 1990.

Robert Ozer, Anne Swenson, Asst. Attys. Gen., and Jim Mattox, Atty. Gen., Austin, Tex., for the State of Tex.

Peter R. Maier, Dept. of Justice, Civ. Div., Appellate Staff, Leonard Schaitman and Alfred R. Mollin, Dept. of Justice, Washington, D.C., for I.C.C.

William P. Jackson, Jr., Arlington, Va., for amicus curiae, Armstrong World Industries, Inc.

Before CLARK, Chief Judge, RUBIN and DAVIS, Circuit Judges.

PER CURIAM:

Invoking the Freedom of Information Act (FOIA),[1] the State of Texas sued the

---

**1.** 5 U.S.C. § 552 (1988).

Interstate Commerce Commission (ICC) to obtain eleven documents relating to the ICC's involvement with a variety of administrative and judicial proceedings regarding Armstrong World Industries, Inc., and several of its affiliates and associates. The district court found that five of the documents were exempt from disclosure under FOIA's intra-agency memo exception, and ordered disclosure of six documents that did not fall within the exception. Both parties appealed. We conclude that the district court properly applied the test for disclosure under FOIA, and affirm its judgment.

## I.

The State of Texas seeks to regulate those of Armstrong's trucking activities that it contends are intra-state but that the ICC holds to be interstate. After the Texas Department of Public Safety had begun an investigation of Armstrong's trucking affiliate, Armstrong sought a declaratory order from the ICC that its shipping operations were interstate. Texas then began an enforcement action against Armstrong in state court, which Armstrong unsuccessfully sought to remove to federal court. Armstrong proposed to counter with a federal suit to enjoin enforcement of the Texas statute. Counsel for Armstrong and the General Counsel of the ICC discussed possible ICC involvement in Armstrong's proposed suit. Texas, which had unsuccessfully sought a stay of the ICC proceeding pending conclusion of its state court action, requested the ICC to disclose documents relating to these proceedings. The ICC complied with respect to all but eleven documents, which it considered exempt from disclosure as intra-agency memoranda under FOIA exemption five.[2]

The district court held that only six of the documents, numbered 2, 3, 7, 9, 10, and 11, were not exempt from disclosure. Documents 2 and 3 are letters between ICC's general counsel and counsel for Armstrong regarding possible ICC intervention in Armstrong's suit against Texas if it were

removed to federal court. Documents 7, 9, 10, and 11 are letters from Armstrong's counsel to the ICC containing drafts of complaints and memoranda of law regarding the litigation between Armstrong and Texas.

The district court found that documents 1, 4, and 8 were internal ICC memos regarding its possible litigation strategy in federal court, and documents 5 and 6 were drafts of the ICC's final judgment regarding Armstrong's petition to the ICC. Texas contends that the district court erred in defining the scope of exemption from discovery in civil litigation, while the ICC in turn cross-appeals, protesting the disclosure of six documents and contending that the district court improperly applied the definition of "intra-agency memo."

## II.

Texas appeals from that part of the district court's judgment permitting the ICC to withhold documents 1, 4, 5, 6, and 8. Citing *F.T.C. v. Grolier, Inc.*,[3] the district court held that these documents were both "intra-agency memoranda" and were the type not ordinarily discoverable in litigation against the agency because they were attorney work product. Texas contends, however, that the ICC destroyed its work-product shield by acting in collusion with Armstrong. It argues alternately that the protection was waived because the ICC disclosed the information at issue to Armstrong instead of acting in compliance with its own regulations and making a complete disclosure to all parties, including the State of Texas.

The core of Texas' argument is that the ICC's communication with Armstrong's counsel regarding intervention in Armstrong's federal suit against Texas constituted *ex parte* communication because Texas' jurisdiction over Armstrong was "at issue" in both the ICC adjudication and Armstrong's proposed federal suit against Texas. Texas claims that the drafts of the ICC's final judgment regarding Arm-

---

**2.** 5 U.S.C. § 552(b)(5).

**3.** 462 U.S. 19, 103 S.Ct. 2209, 76 L.Ed.2d 387 (1983).

strong's petition, as well as its litigation-strategy memos regarding intervention in Armstrong's suit against Texas, embody the fruits of this impermissible *ex parte* contact.

█ In its Comment to the ICC requesting a stay of the ICC adjudication pending resolution of the Texas state court action,[4] Texas did assert its alleged statutory authority to adjudicate its claim against Armstrong in Texas court. That ICC proceeding concerned whether certain of Armstrong's shipments were authorized by its interstate certificate; and, as the ICC notes, its primary jurisdiction over questions of interstate shipping is undisputed.[5] The communications between the ICC and Armstrong concerned the possibility of ICC intervention in the proposed federal court action supporting Armstrong's challenge to Texas' jurisdiction, a separate issue. The district court thus correctly concluded that there was no improper *ex parte* contact regarding Armstrong's petition before the ICC. And it follows that Texas' claim that the ICC waived its privilege by not complying with procedures for disclosure of *ex parte* communications also fails. Finally, since none of these documents were disclosed to outside parties, Texas' argument that the work product privilege was destroyed by disclosure is without merit.

### III.

█ Because the FOIA is designed to promote disclosure, exemptions from its open-file policy are not to be read broadly.[6] Exemption five permits an agency to withhold materials that are "inter-agency or intra-agency memorandums which would not be available by law to a party other than an agency in litigation with the agency."[7]

The communications between the ICC and Armstrong are obviously not inter-agency. The ICC nevertheless contends that the documents are exempt because they are intra-agency memoranda as that term has been defined under the FOIA. To determine whether a document is such an internal memorandum exempt from disclosure, even when it contains information obtained from persons who are not agency employees, such as temporary consultants, we have adopted a functional test, noting that where an agency has "a special need for the opinions and recommendations of temporary consultants," documents reflecting such information should be exempt from disclosure.[8] This departure from the strict words of § 552(b)(5) is justified on the grounds that the purpose of exemption five was to protect the "frank discussion of legal or policy matters"[9] necessary to the formulation of policy, and that in some cases the work of outside consultants or experts would fit this definition even though such persons were not in the government's employment.

█ Consistent with the narrow structure of the FOIA exemptions, however, the district court judge correctly held that the correspondence between counsel for Armstrong and the ICC did not meet this functional definition of intra-agency memoranda. A request by the ICC that Armstrong's counsel furnish it with documents regarding Armstrong's suit against Texas is a mere request for information, not a consultation or a solicitation of expert advice of the kind made in *Hoover*. The information was not sought for the purpose of formulation of ICC policy, a functional exception to disclosure recognized by the District of Columbia Circuit in *Ryan v. Department of Justice*.[10] Finally, although the ICC seeks to characterize the

---

4. Record excerpt F, ex. 3, at 1–2.

5. *See Service Storage & Transfer Co. v. Virginia,* 359 U.S. 171, 79 S.Ct. 714, 3 L.Ed.2d 717 (1959).

6. *Sharyland Water Supply Corp. v. Block,* 755 F.2d 397, 398 (5th Cir.1985).

7. 5 U.S.C. § 552(b)(5) (1988).

8. *Hoover v. United States Dep't of the Interior,* 611 F.2d 1132 (5th Cir.1980).

9. S.Rep. No. 813, 89th Cong., 1st Sess. 9 (1965), quoted in *F.T.C. v. Grolier, Inc.,* 462 U.S. 19, 23, 103 S.Ct. 2209, 2212, 76 L.Ed.2d 387 (1983).

10. 617 F.2d 781 (D.C.Cir.1980).

relationship of its counsel to Armstrong's counsel as that of "co-counsel," there is no basis for such a characterization in the record; rather, Armstrong's motivation throughout was purely self-serving.[11]

We do not hold that a private party furnishing the government with information primarily for its own advantage can never meet this functional test, but here it is clear that Armstrong did not stand in any consultative or advisorial role to the ICC that would justify exempting these documents from disclosure.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

**On Motion to Reconsider Award of Costs**

The motion to reconsider the award of costs is denied because it was filed more than 50 days after the entry of the court's judgment and 21 days after issuance of the court's mandate. Fed.R.App.Proc. 40. In denying this motion and upholding the award of costs on appeal, the court intimates no opinion concerning the merits of the Motion for Costs and Attorney's Fees now pending in the district court.

11. *See Madison Cty. v. United States Dept. of* *Justice,* 641 F.2d 1036, 1039–41 (1st Cir.1981).