# United States Court of Appeals
## For the First Circuit

---

No. 01-1234

STATE OF MAINE,

Plaintiff, Appellee,

v.

UNITED STATES DEPARTMENT OF THE INTERIOR, UNITED STATES
GEOLOGICAL SURVEY, UNITED STATES FISH AND WILDLIFE SERVICE,
UNITED STATES DEPARTMENT OF COMMERCE, AND NATIONAL MARINE
FISHERIES SERVICE,

Defendants, Appellants.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Gene Carter, U.S. District Judge]

---

Before

Selya, Circuit Judge,
Rosenn[*] and Cyr, Senior Circuit Judges.

---

Leonard Schaitman, Assistant United States Attorney, with whom
Matthew M. Collette, Assistant United States Attorney, Paula B.
Silsby, United States Attorney, and Stuart E. Schiffer, Acting
Assistant Attorney General, were on brief for appellants.
Christopher C. Taub, Assistant Attorney General of Maine, with
whom Paul Stern, Deputy Attorney General of Maine, and G. Steven
Rowe, Attorney General of Maine, were on brief for appellees.

---

July 30, 2002

---

[*] Of the Third Circuit, sitting by designation

**ROSENN**, **Senior Circuit Judge**. This appeal raises recurring questions in litigation with agencies of the United States arising out of the tension between the substantive provisions of the Freedom of Information Act (FOIA or the Act), 5 U.S.C. § 552, and the application of the attorney-client and work-product privileges. In January 2000, the State of Maine (Maine) submitted a series of FOIA requests to the United States Fish and Wildlife Service, a component of the Department of Interior (DOI), and the National Maritime Fisheries, a component of the Department of Commerce (DOC)(collectively the Services) for documents relating to the efforts of the Services to list Atlantic salmon in eight rivers within Maine under the protection of the Endangered Species Act (ESA), 16 U.S.C. §§ 1531-1544.

The DOI provided Maine with approximately 1400 documents but withheld 308 documents, claiming attorney-client or work-product privileges. Maine filed an action in the United States District Court for the District of Maine to enjoin the Services from improperly withholding those documents. On cross-motions for summary judgments, the district court allowed the DOI to withhold a number of documents but ordered that 197 documents be disclosed immediately to Maine. It found them unprotected by the attorney-client or work-product privileges. The DOI timely appealed.

Following our issuance of an opinion in this case, the DOI filed a petition for rehearing and Maine responded. We withdrew our original opinion and vacated the judgment. We now affirm, reverse, and vacate in part.

## I.

## Background

To provide a better understanding of the issues raised on appeal and the litigious climate in which Maine made its requests, we set forth the background history of this litigation.

The genesis of these proceedings is that in 1991, the United States Fish and Wildlife Service designated Atlantic salmon in five rivers within Maine as "candidate species" under the Endangered Species Act.[1] In 1993, the Services received petitions to list all Atlantic salmon throughout the United States under the ESA. In 1995, the Services decided that nationwide listing was unwarranted. However, they determined that Atlantic salmon in

---

[1] Congress enacted the ESA to protect species deemed to be either endangered or threatened. The DOI and the DOC jointly administer the ESA. Endangered is defined as: "in danger of extinction throughout all or a significant portion of its range." 16 U.S.C. § 1532(6). Threatened is defined as: "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." Id. § 1532(20). Species is defined as: "any distinct population segment of any species." Id. § 1532(16). Although the normal listing procedures must comply with the Administrative Procedures Act (APA), the Services have the power to temporarily bypass the APA if an "emergency posing a significant risk to the well-being of any species" exists. Id. § 1533(b)(7).

seven rivers within Maine were a "distinct population segment," eligible for protection under the ESA and in danger of extinction. The Services, therefore, proposed to list the salmon in these seven rivers as "threatened" under the ESA.

Opposed to such a listing, Maine proposed the Atlantic Salmon Conservation Plan for Seven Maine Rivers. In December 1997, the Services, satisfied with the Conservation Plan, withdrew the listing proposal. The compromise obligated Maine to issue annual reports which were to be made available for public comment. With the withdrawal of the proposed listing, the Services advised Maine that they would maintain oversight of the species. They also outlined circumstances under which the process for listing Atlantic salmon in Maine rivers would be reinstated. In January 1999, Maine circulated its draft 1998 annual report, which it issued in April 1999 as a final report after comments from the Services and the public.

In the meantime, in January 1999, the Defenders of Wildlife filed an action in the United States District Court for the District of Columbia challenging the withdrawal of the Services' 1997 listing as violative of the ESA and the APA. In March 1999, Maine moved to intervene as defendant.[2] The Defenders

---

[2] Maine also pleaded a cross-claim against the Services challenging the listing of Atlantic salmon, but stipulated to a dismissal of the cross-claim without prejudice. Maine threatened to challenge the validity of any final listing should it ever come to pass.

-4-

sought, among other relief, to have the Services list the Atlantic salmon under the emergency listing provision of the ESA. In August 1999, Trout Unlimited filed a suit raising substantially the same issues in the same court as the Defenders. In the midst of the Defenders and Trout lawsuits and Maine's threat of future legal action, the Services in November 1999 conducted another status review and decided to list the Atlantic salmon as being in danger of extinction in eight rivers within Maine.[3]

In resisting the proposed listing, Maine made a series of FOIA requests to the Departments and their components seeking documents pertaining to the decision to list the Atlantic salmon in eight Maine rivers as endangered. The DOI satisfied Maine's first request made in December 1999. Maine made a second request, which is the subject of this appeal, on January 18, 2000, to both Departments, DOI and DOC, seeking all documents, data, studies, and correspondence pertaining to the Services' consideration of whether to list Atlantic salmon in eight Maine rivers.[4] In response, the DOI released approximately 1400 documents. It withheld 308 documents as protected from disclosure under the attorney-client

---

[3] In November 2000, after public hearings and comments, the Services issued their final decision that became effective on December 18, 2000. It listed as endangered a distinct population of wild Atlantic salmon. In December 2000, Maine filed an action in the United States District Court for the District of Maine challenging the validity of the final decision.

[4] The disputes with respect to documents from the DOC and its division have been successfully resolved in the district court.

and work-product privileges subsumed by the FOIA exemption 5 U.S.C. § 552(b)(5).[5] The DOI asserts that all withheld documents were generated between January 1999 and January 2000, a period in which the Defenders and Trout lawsuits were pending.

Unsuccessful in administrative appeals, Maine filed an action in June 2000, in the United States District Court for the District of Maine alleging that the DOI improperly withheld 308 documents. On cross-motions for summary judgment, the district court issued its decision and order on December 26, 2000, as amended on January 2, 2001. Maine v. DOI, 124 F. Supp. 2d 728 (D. Me. 2001). It ordered the DOI immediately to disclose 197 documents to Maine, finding them not exempt under either the attorney-client or work-product privileges.[6] Although the district court stayed the immediate disclosure order pending appeal, the DOI released 84 documents and challenged disclosure of the remaining 113 documents.[7]

---

[5] In two documents, the DOI claimed an exemption under 5 U.S.C. § 552(b)(6), the privacy exemption, to which the district court agreed. These documents are not at issue here.

[6] As to the remaining documents, the district court found seventy-one documents to be exempt and ordered an in camera review of forty documents. None of those documents are at issue before this Court, but the district court stayed the in camera review pending the outcome of this interlocutory appeal.

[7] The district court exercised subject matter jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B). This Court has appellate jurisdiction over the interlocutory order. Irons v. FBI, 811 F.2d 681, 683-84 (1st Cir. 1987) (upholding interlocutory appellate jurisdiction pursuant to either 28 U.S.C. § 1292(a)(1) or

On appeal, the DOI raises two primary issues. First, as to the attorney work-product privilege, the DOI claims that the court erred in requiring a withholding agency to demonstrate that a document was prepared "primarily" for litigation purposes to protect it from disclosure under the FOIA, 5 U.S.C. § 552(b)(5). Second, the DOI argues that the district court erred in rejecting the agency's assertion of attorney-client privilege for documents containing legal advice and analysis from agency attorneys and draft materials written by agency officials on the ground that the documents do not reveal confidential communications from clients.

The FOIA requires government agencies to "make . . . promptly available" to any person, upon request, whatever "records" the agency possessed unless those records fall within one of the statute's exemption. 5 U.S.C. § 552(a)(3), (b). Even if some information within a document is exempt, the withholding agency must still disclose reasonably segregable non-exempt information. Id. § 552(b). Several years ago, this court had the occasion to review the policy, purpose and sweep of FOIA in Church of Scientology International v. United States Department of Justice, 30 F.3d 224 (1st Cir. 1994). Writing for the court, Judge Coffin noted that the statute's basic purpose is to open agency action to

---

collateral order jurisdiction over FOIA orders directing immediate disclosure).

the light of public scrutiny.  Id. at 228.  The policy underlying the statute, he wrote, "is thus one of broad disclosure, and the government must supply any information requested by an individual unless it determines that a specific exemption, narrowly construed, applies."  Id.

When an aggrieved party files an action under the Act because documents are withheld, the burden under the statute is on the agency to demonstrate the applicability of a claimed exemption. 5 U.S.C. § 552(a)(4)(B). The district court must make a de novo determination whether the agency has met its burden.  Id.

To facilitate a broad disclosure and assist the requester and, if necessary, a reviewing court, in determining whether the claim of exemption is justified, a practice has developed for the withholding agency to supply the requester with a Vaughn index. The index takes its name from Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), and requires a correlation of the information that an agency decides to withhold with the particular FOIA exemption and the agency's justification for withholding.  Maynard v. CIA, 986 F.2d 547, 556 (1st Cir. 1993).  The index includes "a general description of each document sought by the FOIA requester and explains the agency's justification for nondisclosure of each individual document or portion of a document."  Church of Scientology Int'l, 30 F.3d at 228.  Thus, the index compels the agency to scrutinize any material withheld in justification of its

claimed exemption, assists the court in performing its duties, and gives the requester as much information as is legally permissible. Id.

Here, the DOI claims that 5 U.S.C. § 552(b)(5), which exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency," shields from disclosure the documents at issue. The Supreme Court has interpreted that exemption to protect from disclosure those documents that normally are privileged from civil discovery. NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975); see also Church of Scientology Int'l, 30 F.3d at 236. Thus, the attorney-client and work-product privileges are included within the scope of the fifth exemption of FOIA. Sears, Roebuck & Co., 421 U.S. at 154.

Although enacted to inform the public about government agencies' actions, FOIA "was not designed to supplement the rules of civil discovery, and [a requester's] right to obtain information is neither enhanced nor diminished because of its needs as a litigant." Deering Milliken, Inc. v. Irving, 548 F.2d 1131, 1134-35 (4th Cir. 1977)(citing Sears, Roebuck & Co., 421 U.S. at 143 n.10). With these principles in mind, we address the issues before us and turn to the exemptions claimed by the DOI under the work-product and attorney-client privileges.

## A.

## Attorney Work-Product Privilege

The attorney work-product privilege first established in _Hickman_ v. _Taylor_, 329 U.S. 495 (1947), codified in Fed. R. Civ. P. Rule 26(b)(3) for civil discovery, protects from disclosure materials prepared by attorneys "in anticipation of litigation." Since _Hickman_, courts have reaffirmed the "strong public policy" on which the work-product privilege is grounded. _E.g._, _United States_ v. _Adlman_, 134 F.3d 1194, 1197 (2d Cir. 1998). The privilege protects work done by an attorney in anticipation of, or during, litigation from disclosure to the opposing party.

The specific problem posed by the parties here is the interpretation of the "in anticipation of litigation" requirement in a FOIA context. The DOI submits that the district court erred in holding that the documents DOI claims are privileged as attorney work-product must not only identify the litigation for which each document was prepared but also establish that counsel prepared the document primarily for litigation purposes.

Relying on the Supreme Court's admonition to interpret FOIA exemptions narrowly, the district court held that the determinative question here is whether the prospect of litigation "served as the <u>primary motivating factor for the preparation of the documents.</u>" _Maine_, 124 F. Supp. 2d at 743 (citing _Scott Paper Co._ v. _Ceilcote Co._, 103 F.R.D. 591, 594 (D. Me. 1984))(emphasis

added).  The court reasoned that without such demonstration, documents created for a dual purpose, as is common with controversial rule proposals, "would eviscerate the purposes of the FOIA" by potentially allowing an agency to withhold any document created during a decision to promulgate a controversial rule.  Id. To do so would do nothing to advance the core purpose of the attorney work-product privilege which is to protect "the adversary trial process itself."  Id.  Thus, the court held that to sustain its burden of establishing the attorney work-product privilege, the DOI's Vaughn index must identify the litigation for which each document was prepared and establish that the document was prepared primarily for litigation purposes.  Id. at 743-44.

The DOI argues that the district court's reliance on Scott Paper Company v. Ceilcote Company, 103 F.R.D. 591, 594 (D. Me. 1984), a district court opinion, to require that counsel show that the document was prepared "in anticipation of litigation" and that litigation was "the primary factor" contradicts the purpose of Fed. R. Civ. P. Rule 26 and court of appeals cases.  The DOI asserts that numerous courts of appeals have rejected the district court's approach here and adopted a "because of" standard.  The "because of" standard is one that determines whether a document is

prepared because of existing or expected litigation. <u>United States</u>
v. <u>Adlman</u>, 134 F.3d 1194, 1202 (2d Cir. 1998).[8]

In DOI's petition for rehearing, it augments and
clarifies its views as to the application of <u>FTC</u> v. <u>Grolier, Inc.</u>,
462 U.S. 19 (1983) to the issue before us and emphasizes that the
district court interpreted the relevant FOIA exemption too
narrowly. The district court erred, the DOI argues, in holding
that the documents are protected by the attorney work-product
privilege only if the "primary motivating factor" for their
creation was to assist in litigation. DOI strenuously argues that
the applicable law, even in the FOIA context, is Rule 26 of the
Federal Rules of Civil Procedure[9] and case law governing the

---

[8]    Other courts of appeals that have adopted this standard
include:  <u>National Union Fire Ins. Co.</u> v. <u>Murray Sheet Metal Co.,
Inc.</u>, 967 F.2d 980, 984 (4th Cir. 1992); <u>Simon</u> v. <u>G.D. Searle &
Co.</u>, 816 F.2d 397, 401 (8th Cir. 1987); <u>Senate of Puerto Rico</u> v.
<u>DOJ</u>, 823 F.2d 574, 586 n.42 (D.C. Cir. 1987); <u>Binks Mfg. Co.</u> v.
<u>National Presto Indus., Inc.</u>, 709 F.2d 1109, 1118-19 (7th Cir.
1983); <u>In re Grand Jury Proceedings</u>, 604 F.2d 798, 803 (3d Cir.
1979).

[9]    Federal Rule of Civil Procedure 26(b)(3) provides in
pertinent part that "a party may obtain discovery of documents and
tangible things otherwise discoverable . . . and prepared in
anticipation of litigation or for trial by or for another party or
by or for that other party's representative (including the other
party's attorney, consultant, surety, indemnitor, insurer, or
agent) only upon a showing that the party seeking discovery has
substantial need of the materials in the preparation of the party's
case and that the party is unable without undue hardship to obtain
the substantial equivalent of the materials by other means. In
ordering discovery of such materials when the required showing has
been made, the court shall protect against disclosure of the mental
impressions, conclusions, opinions, or legal theories of an
attorney or other representative of a party concerning the

privilege, particularly <u>FTC</u> v. <u>Grolier, Inc.</u> and <u>United States</u> v. <u>Adlman</u>.

In <u>Grolier</u>, the question was the extent, if any, to which the work-product component of Exemption 5 applies when the litigation for which the requested documents were generated had been terminated.  Although the issue was not identical to the question before us, the Supreme Court concluded that whatever problems are engendered in construing Rule 26(b)(3) in the civil discovery area, the Rule "provides a satisfactory resolution to the question of whether work-product documents are exempt under the FOIA."  462 U.S. at 25-26.  Without any need to rely exclusively upon any particular construction of Rule 26(b)(3), the Court held that the test under Exemption 5 "is whether the documents would be 'routinely' or 'normally' disclosed upon a showing of relevance." <u>Id.</u> at 26.  This was hardly a bolt from the blue.  Several years before, the Court explained in <u>NLRB</u> v. <u>Sears Roebuck & Co.</u>, 421 U.S. 132, 149 (1975), that Exemption 5 "exempt[s] those documents, and only those documents, normally privileged in the civil discovery context."

<u>Adlman</u> provides the most exhaustive discussion, albeit in a non-FOIA context, of the standard adopted by the district court here, as well as the one the DOI advances to this court.  The court

litigation."

of appeals described the issue and the competing standards as follows:

> It is universally agreed that a document whose purpose is to assist in preparation for litigation is within the scope of the Rule and thus eligible to receive protection if the other conditions of protection prescribed by the Rule are met. The issue is less clear, however, as to documents which, although prepared because of expected litigation, are intended to inform a business decision influenced by the prospects of the litigation. The formulation applied by some courts in determining whether documents are protected by work-product privilege is whether they are prepared "primarily or exclusively to assist in litigation" - a formulation that would potentially exclude documents containing analysis of expected litigation, if their primary, ultimate, or exclusive purpose is to assist in making the business decision. Others ask whether the documents were prepared "because of" existing or expected litigation — a formulation that would include such documents, despite the fact that their purpose is not to "assist in" litigation.

134 F.3d at 1197-98 (emphasis added).

The Adlman Court reasoned that the "primary" standard is at odds with the text and the policies of Rule 26 because nothing in it suggests that documents prepared for dual purposes of litigation and business or agency decisions do not fall within its scope. Id. at 1198-99. Thus, that court rejected the "primary" purpose standard as at odds with the literal terms and purpose of the Rule. Id. Instead, the court adopted the formulation of the work-product rule enunciated by Wright and Miller, 8 Fed. Practice & Procedure, § 2024 at 343 (1994), and adopted by a number of circuits, that documents should be deemed prepared for litigation and within the scope of the Rule if, "in light of the nature of the document and the factual situation in the particular case, the

-14-

document can be fairly said to have been prepared or obtained because of the prospect of litigation."  Id. 1202.

Maine does not dispute the reasoning or pertinence of these cases in its answer to the petition for rehearing.  Rather, it submits, as it has before, "that the precise scope of the work-product privilege is essentially irrelevant.  This is so because defendants failed to demonstrate that the documents at issue fall within even the broad scope of the privilege set forth in the cases upon which defendants rely.  There is nothing to suggest that the documents were created for any reason other than to assist the defendants in taking a routine administrative action – implementing a listing under the Endangered Species Act."  See Answer of Maine at 1-2.

In light of the decisions of the Supreme Court, we therefore agree with the formulation of the work-product rule adopted in Adlman and by five other courts of appeals.  (See n.9 supra).  Thus, we must conclude that in the instant case it was error to require the DOI to demonstrate that the withheld documents were created primarily for litigation purposes in order to claim the work-product privilege under 5 U.S.C. § 552(b).

This conclusion does not end our inquiry.  Maine argues that the "defendants produced so little information regarding the withheld documents that there is simply no way of determining why a particular document was prepared, what the document discusses, or

whether it should be protected from disclosure."  See Answer of
Maine at 13.  The DOI, on the other hand, argues that the district
court also erred in finding that the DOI failed sufficiently to
identify the litigation for which the alleged work-product
documents were prepared.  This court previously has held:

> [A]t a minimum, an agency seeking to withhold
> a document . . . must identify the litigation
> for which the document was created (either by
> name or through factual description) and
> explain why the work-product privilege applies
> to all portions of the document.

Church of Scientology Int'l, 30 F.3d at 237.  Although the
identification and explanation requirements are not to be given a
hypertechnical construction, they can neither be brushed aside nor
satisfied by vague generalities.

The DOI relies on the two declarations of Edward T.
Keable, the Attorney-Advisor, Office of the Solicitor, United
States Department of the Interior, that the DOI submitted in
support of its summary judgment motion.  In the first declaration,
Keable asserts that the withheld documents are privileged and
refers to his written legal opinion that was sent to Maine during
the administrative appeal. However, the declaration is conclusory
and not of much help here.  In the second declaration, Keable
identifies the following lawsuits related to the listing process:
(1) Defenders of Wildlife v. Babbitt; (2) Trout Unlimited v.
Babbitt; (3) Maine v. Department of Interior; (4) Maine's threat to
challenge the final rule; and (5) Maine Aquaculture Association

-16-

threat of suit if pen permits are modified to protect wild salmon. The declaration is peremptory; it offers no information that the documents requested were prepared for any of these lawsuits. In both the legal opinion and in the corresponding transmittal letter, the DOI explicitly acknowledged it has not identified the litigation to which the withheld documents relate. Rather, it reasoned that because there already have been three law suits directly related to the listing, "it is reasonable for the attorneys advising the Department to anticipate more litigation at various stages in the process."

An examination of the Vaughn index also is not helpful. Although the index identifies the documents and describes the general subject matter of each, it fails to demonstrate that any particular document was prepared for litigation and fails to correlate the documents to the lawsuits referred to in the Keable declarations. The mere relation of documents to litigation does not automatically endow those documents with privileged status. The burden was on the DOI to make the correlation between each withheld document and the "litigation for which the document was created," and the district court found that the DOI did not make it. We see no compliance with this court's minimum requirements laid out in Church of Scientology International and perceive no error by the district court in this regard.

-17-

The problem that now confronts us is that the district court did not identify the documents that it considered non-exempt because of the DOI's failure to satisfy the district court's "primary" standard or its failure to identify the litigation for which the documents were created, or both. Our examination of the Vaughn index and the lengthy footnote 18 of the district court, 124 F. Supp. 2d at 745 n.18, leads us to the conclusion, however, that the majority of the documents at issue here were found non-exempt by the district court because the DOI failed to identify the litigation for which the documents were created. As explained, the Vaughn index and the Keable declarations are of little help in identifying the litigation responsible for their creation.[10] The DOI admitted as much in its legal opinion and in the corresponding transmittal letter.

As to documents 71, 72, 80, 81, 91, 92, 207, 208, 234, and 267, the DOI's reference to the emergency listing proposal could arguably be deemed to identify the litigation, mainly, the Defenders and Trout lawsuits. The district court stated that the descriptions of the emergency listing proposal, however, were "ambiguous . . . explanations of the contents of the documents and their possible relevance to litigation." We see no reason to disagree. The Adlman court emphasized that the "because of"

---

[10] We believe that document 218 may sufficiently satisfy the work-product rule. This document, therefore, is protected and exempt from disclosure.

standard does not protect from disclosure "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation." Adlman, 134 F.3d at 1202 (citing Fed. R. Civ. P. 26(b)(3), Advisory Committee's Note; National Union Fire Ins. Co. v. Murray Sheet Metal Co., 967 F.2d 980, 984 (4th Cir. 1992)). This is true even if the documents aid in the preparation of litigation. Id.

On further review of the Vaughn index, we conclude that the references to the emergency listing process are insufficient descriptions to determine whether the documents were created because of the Defenders and Trout lawsuits, or were "prepared in the ordinary course of business or . . . would have been created in essentially similar form irrespective of the litigation." Thus, although we conclude that the district court erred in holding that the "primary" standard is the applicable test, under the circumstances, its resolution of the documents to be released remains unaffected.

Finally, the DOI argues that the district court erred in concluding that FOIA does not exempt from disclosure factual material in an otherwise privileged attorney's work-product. Maine, 124 F. Supp. 2d at 744-45. Maine moots the issue by withdrawing its request for those nineteen documents still on appeal that the district court ordered disclosed based on this

legal holding.  At oral argument, counsel for Maine also advised the court that it will make a similar withdrawal with respect to the documents subject to in camera review.  Therefore, we will vacate that portion of the district court's order that held that FOIA exemption 5 does not encompass factual components of a privileged attorney work-product.  Medical Prof'l Mut. Ins. Co. v. Breon Lab., Inc., 141 F.3d 372, 376 (1st Cir. 1998) ("If a judgment is rendered moot during an appeal, either through happenstance or unilateral action by the prevailing party, normally the court dismisses the appeal and orders the judgment vacated.") (citing United States Bancorp Mortgage Co. v. Bonner Mall P'ship, 513 U.S. 18, 25 (1994)).

## B.

## Attorney-Client Privilege

We now consider the attorney-client privilege.  The DOI contends that the court either misunderstood the scope of the attorney-client privilege or applied it very narrowly in finding 81 of the still remaining 94 documents on appeal unprotected by the attorney-client privilege.  This privilege protects confidential communications made by a client to his attorney.  In re Grand Jury Subpoena, 274 F.3d 563, 571 (1st Cir. 2001).  The attorney-client privilege "is the oldest of the privileges for confidential communications recognized by law." Weinstein's Federal Evidence, § 503.03 (2d Ed.).  The modern rationale for the privilege is more

practical and expansive, promoting full disclosure by clients to their attorneys; "it enables attorneys to act more effectively, justly, and expeditiously." Id. The privilege also protects from disclosure documents provided by an attorney if the party asserting the privilege shows:

> (1) that he was or sought to be a client of [the attorney]; (2) that [the attorney] in connection with the [document] acted as a lawyer; (3) that the [document] relates to facts communicated for the purpose of securing a legal opinion, legal services or assistance in legal proceedings; and (4) that the privilege has not been waived.

United States v. Bay State Ambulance and Hosp. Rental Serv., Inc., 874 F.2d 20, 27-28 (1st Cir. 1989) (quoting United States v. Wilson, 798 F.2d 509, 512 (1st Cir. 1986)).

The DOI here asserts that the court held certain documents unprotected by the privilege because they did not reveal a confidential communication. This, it submits, is contrary to Town of Norfolk v. United States Army Corps of Engineers, 968 F.2d 1438, 1457-58 (1st Cir. 1992), which holds that an attorney's advice to a client is protected if it relates to a confidential communication. The DOI, however, mischaracterizes the district court ruling. The district court held that the DOI failed to demonstrate a confidential factual communication and "also [failed] to explain how the withheld legal analysis would reveal any such fact if it existed." Maine, 124 F. Supp. 2d at 742.

Further, relying on Town of Norfolk, the DOI argues that the court's erroneous view of the scope of the privilege led the

-21-

court to reject the privilege for documents at the heart of the exchange of information and advice between the attorney and his client. It points to the attorney's advice, the agency's proposed actions, comment on and analysis of the lawyers' draft pleading, the opposing party's pleadings, and discussions of strategy between the lawyer and the client.

The DOI's arguments are misplaced. In <u>Town of Norfolk</u>, the court made a finding, absent here, that "by the content of the letters, it is clear that they relate to facts communicated for the purpose of securing a legal opinion, legal services or assistance in a legal proceeding." 968 F.2d at 1458 (internal quotation marks and citation omitted). Here, the DOI has failed to explain, or even attempt to explain except in conclusory statements, how the documents claimed to be protected establish that they relate to a confidential client communication. It further asserts that the district court erred in requiring the DOI to show definitively that each document reveals the substance of a confidential fact communicated by the client. As we already noted, the court's conclusion of inapplicability of the attorney-client privilege was premised on its determination that the DOI failed to establish the requisite element of a client-communicated confidential fact.

The DOI erroneously assumes that the requirement of client communicated confidentiality is satisfied merely because the documents are communications between a client and attorney. The

error in this assumption can be found by referring to <u>Mead Data</u> <u>Central, Inc.</u>, 566 F.2d at 253, where the court held that the attorney-client privilege "does not allow the withholding of documents simply because they are the product of an attorney-client relationship . . . . <u>It must also be demonstrated that the</u> <u>information is confidential.</u>" (emphasis added)(footnote omitted).

Like the district court here, the Court of Appeals for the District of Columbia Circuit in <u>Mead</u> found certain documents unprotected by the attorney-client privilege because the withholding agency failed to demonstrate the confidentiality of the information on which they are based. The court found that the withholding party simply failed to demonstrate that the withheld documents contain or relate to information that the client intended to keep confidential and it thus failed to establish an essential element of the privilege. 566 F.2d at 253-54.

We need not discuss each document for which the DOI claims the attorney-client privilege because they all suffer from the same infirmity. The Vaughn index states the names of the individual or individuals preparing each document withheld, the recipient, the claimed privilege, a general description of the document, and the date. A strong example of the index in support of the attorney-client privilege is entry number 112:

> 14-page draft statement materials facts from
> an agency official to the DOJ lawyer
> representing the Services in the Defenders of

Wildlife case in order to assist the lawyer in preparing pleadings in the case.

In Church of Scientology International, this court rejected index entries as insufficient "because they fail to specify whether the source was provided an express or implied grant of confidentiality, or do not provide sufficient detail about the surrounding circumstances to support an expression of implied confidentiality."  30 F.3d at 238.  The above entry, like the others, including those claimed under work-product privilege, except one, is very general, without any explanation justifying the privilege, and fails to identify any circumstance expressly or inferentially supporting confidentiality.

We therefore conclude that Judge Carter, in his analysis of the index and supporting affidavits, committed no error.

**C.**

**Summary Judgment**

Lastly, the DOI argues that the court acted prematurely in granting summary judgment.  Relying on Church of Scientology International, 30 F.3d at 239-40, Judge Carter stated:

> When an agency has failed to provide sufficient detail in its Vaughn index and/or affidavits in support of its claim of exemption and nonsegregability, a district court may require supplementation of the Vaughn index, conduct an in camera review of the documents in question, authorize limited discovery, or order immediate disclosure of the documents.

-24-

Maine, 124 F. Supp. 2d at 737. The judge concluded that DOI met its burden of establishing the privileged claim for some of the documents. For many, he concluded that the DOI failed to supply sufficient information to meet its burden of establishing the claimed privilege. Id. at 738.

The DOI contends that the court erred on cross-motions for summary judgment in granting immediate disclosure based on an inadequate Vaughn index instead of providing the DOI with an opportunity to submit additional affidavits and to revise its Vaughn index. It argues that at the very least there exist genuine issues of material fact to preclude granting of summary judgment and ordering immediate disclosure.

As Maine points out, the DOI also requested that this case proceed to disposition on its motion for summary judgment. Further, the DOI has unilateral and uninhibited access to the content of the withheld documents. In Church of Scientology International, this court remanded the case and instructed the parties that after the government has provided additional information, the district court could choose to permit discovery limited to specified documents, conduct in camera review of selected documents, order release of some documents, or a combination of these procedures. 30 F.3d at 239-40. This is the course that the court followed here. It conducted a comprehensive and painstaking review of the documents and the Vaughn index to

arrive at its decision. It ordered immediate disclosure for some documents where the DOI failed to satisfy the legal prerequisites of the claimed privilege.

Although in Irons v. Bell we cautioned against ordering immediate disclosure of documents based on an agency's admittedly flawed affidavit, especially where the supporting affidavit involves a novel question of law, 596 F.2d 468, 471 n.6 (1st Cir. 1979), we perceive no error by this court. The Court of Appeals for the Third Circuit similarly frowned upon immediate disclosure in Coastal States Gas Corporation v. Department of Energy, but noted that it in no way encouraged agency delay. 644 F.2d 969, 979 (3d Cir. 1981)(Coastal II). It would in the future follow the suggestion of the court in Coastal States Gas Corporation v. Department of Energy, 617 F.2d 854 (D.C. Cir. 1980)(Coastal I), requiring agencies to supply sufficient information the first time so as to allow courts to make a reasoned determination pertaining to the legitimacy of the claimed exemptions. Coastal II, 644 F.2d at 981. Of special pertinence here, the Coastal II court also concluded that to survive summary judgment, it would not be unreasonable to require an agency to stand on its first Vaughn index. Id. at 984.

In the instant case, the DOI opposed the discovery of these documents and never requested a hearing or oral argument. It stood on its motion for summary judgment. The DOI never submitted

a supplemental or revised index justifying the withholding of the documents under the claimed privilege. The district court adhered to the common standard summary judgment procedure and, under the circumstances, did not abuse its discretion in denying the agency "a second chance."

## III.

### Conclusion

In sum, as Maine has withdrawn its request for documents related to the district court's holding that factual materials in a privileged attorney work-product are not exempt from disclosure, we will vacate that part of the district court's order. The district court's standard that a document may not be exempt under the attorney work-product privilege unless the prospect of litigation "served as the primary motivating factor" must be rejected. Under the circumstances already explained, the error is harmless here. For the reasons set forth above, the district court's rulings on the attorney-client privilege are affirmed. The order granting Maine's motion for summary judgment and directing the disclosure of the 94 withheld documents is affirmed except as to document 218.

**Affirmed, reversed, and vacated in part.** All parties shall bear their own costs.