**AMICA MUTUAL INSURANCE COMPANY, as subrogee of Maryanne Gaugin, Plaintiff,**

v.

**W.C. BRADLEY CO., Defendant.**

No. CIV.A. 02–10602–JGD.

United States District Court,
D. Massachusetts.

April 4, 2003.

Order Supplementing Opinion,
April 16, 2003.

allegedly caused by a gas grill manufactured by Bradley. This matter is before the court on Bradley's motion to compel Amica to answer an interrogatory requesting the names of individuals involved in investigating the fire and to produce documents relating to the loss (Docket # 23). Amica has withheld this information claiming work product immunity, attorney-client privilege, or that the information is proprietary and confidential.

After reviewing the submissions and considering the parties' arguments, this court concludes that Amica has validly claimed the attorney-client privilege for the six documents so designated on its privilege log and Bradley's motion is DENIED as to these documents. However, the court is unable to determine from the descriptions on Amica's privilege log and the additional submissions whether Amica has properly refused to answer Interrogatory No. 7 and withheld the documents designated as either work product or as proprietary. Therefore, Amica shall submit these documents to the court for *in camera* review. The court defers ruling on Bradley's motion as it relates to these documents and Interrogatory No. 7 until after conducting the *in camera* review.

Anthony J. Antonellis, Esq., John A. Donovan, III, Esq., Sloane & Walsh, Boston, MA, for Amica Mutual Insurance Co., Plaintiff.

Gerard A. Butler, Esq., Smith & Duggan, Boston, MA, for W.C. Bradley Co., Defendant.

### MEMORANDUM OF DECISION & ORDER ON DEFENDANT'S MOTION TO COMPEL [1]

DEIN, United States Magistrate Judge.

### I. INTRODUCTION

Plaintiff Amica Mutual Insurance Company ("Amica") brought this diversity subrogation action against defendant W.C. Bradley Company ("Bradley") after Amica indemnified one of its insureds for a house fire

### II. STATEMENT OF FACTS [2]

On July 10, 2000, a gas grill allegedly manufactured by Bradley caused a fire at the home of one of Amica's insureds, resulting in substantial damage. (Compl. (Def.'s Mem. Ex. 1) ¶¶ 5, 8–9). On or about that same day, the insured notified Amica of the fire and made a claim under a homeowner's insurance policy (the "Policy") Amica had issued in June of 2000. (Compl. ¶ 7; Harrington Aff. (Pl.'s Opp'n Ex. 2) ¶ 2). Amica immediately assigned Mr. Richard Harrington to the claim as the Senior Claims Supervisor. (Harrington Aff. ¶ 3).

Amica then initiated a claims investigation. (*Id.* ¶ 3). The day after the fire, Amica made an advance payment of $10,000 to its insured and notified its insured that the claim had

---

1. The parties consented to transfer the case to this court for all purposes, including trial and the entry of final judgment, pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73.

2. This Statement of Facts is limited to those facts relevant to the instant motion.

been assigned to a claim service for investigation. (*Id.* ¶ 4; Def.'s Mem. Ex. 2). Around this time, Amica also communicated with its attorneys at Sloane and Walsh, LLP and retained an expert fire consultant. (Harrington Aff. ¶¶ 5, 6; Harrington Dep. (Def.'s Reply Mem. Ex. 1) at 46). The parties dispute when Amica's coverage investigation ended. Amica contends it determined that there was coverage within one day, while Bradley asserts that Amica took several weeks to ascertain whether there was coverage for the loss. (Harrington Aff. ¶ 4; Def.'s Mem. at 2). The parties also dispute the reason Amica hired the expert. Amica maintains that it immediately recognized that it would pursue a subrogation claim against the grill's manufacturer and retained the expert to assist it in preparing for litigation. (Harrington Aff. ¶ 5). On the other hand, Bradley asserts that Amica hired the expert in the ordinary course of investigating whether the claim was covered under the Policy. (Harrington Dep. (Def.'s Reply Mem. Ex. 1) at 45–46; Def.'s Mem. at 7–8). During the month of July 2000, Amica generated and received several documents relating to this expert as well as many other documents relating to the fire. (Def.'s Mem. Exs. 2, 6–7, 14).

Ultimately, Amica paid its insured over $330,000 for the loss under the Policy. (Harrington Aff. ¶ 4). Amica then brought suit against Bradley in Massachusetts state court on January 2, 2002. (Compl. at 6). Bradley later removed the action to this court. (Docket # 1). On May 31, 2002, Bradley served interrogatories and document requests on Amica. (Def.'s Mem. Exs. 8–9). On October 23, 2002, Amica responded to these discovery requests by, *inter alia*, objecting to Interrogatory No. 7, which asked Amica to:

> Identify each Person who inspected the fire scene, investigated the fire, or gathered any evidence related to the fire.

(Def.'s Mem. Ex. 12 at 4–5). Although Amica provided the names of several individuals, it also withheld information and objected on

the grounds that, *inter alia*, the information sought was protected by the attorney-client privilege and/or the work product doctrine. (Def.'s Mem. Ex. 12 at 5). Amica also objected to several categories of requested documents based on these same grounds. (Def.'s Mem. Ex. 13). On January 16, 2002, Amica submitted a privilege log to Bradley claiming work product immunity for twenty documents, invoking the attorney-client privilege for six documents, and asserting that two documents contained undiscoverable proprietary information. (Def.'s Mem. Ex. 14).[3]

## III. DISCUSSION

### The Attorney–Client Privilege

Bradley seeks six documents Amica designated as privileged attorney-client communications on the basis that Amica failed to properly identify the attorney(s) involved and establish that the communications were made for the purpose of obtaining legal advice. (Def.'s Mem. at 9–10). Amica contends Mr. Harrington's affidavit establishes that the documents are privileged. (Pl.'s Opp'n Mem. at 6). This court agrees.

In diversity cases such as this, state law determines the scope and applicability of the attorney-client privilege. *See F.D.I.C. v. Ogden Corp.*, 202 F.3d 454, 460 (1st Cir.2000) (citing Fed.R.Evid. 501). Under Massachusetts law, this privilege "springs from the attorney-client relationship" which arises " 'when (1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance.' " *Id.* at 461 (quoting *DeVaux v. Am. Home Assur. Co.*, 387 Mass. 814, 818–19, 444 N.E.2d 355, 357 (1983)). The privilege " 'extends to all communications made to an attorney or counsellor, duly qualified and authorized as such, and applied to by the party in that capacity, with a view to obtain his advice and opinion in matters of law, in relation to his legal

---

**3.** Shortly thereafter, Amica furnished Bradley with factual portions of a report the expert consultant prepared. (Pl.'s Opp'n Ex. 3).

rights, duties and obligations.'" *F.D.I.C. v. Ogden Corp.*, 202 F.3d at 461 (quoting *Hatton v. Robinson*, 31 Mass. 416, 421, 14 Pick. 416, 421 (1833)). The party asserting the privilege has the burden of establishing its applicability. *See F.D.I.C. v. Ogden Corp.*, 202 F.3d at 460.

■ In the instant case, Amica has overcome Bradley's objections. In his affidavit, Mr. Harrington unambiguously stated that Amica communicated with its counsel, Sloane and Walsh, LLP, to obtain legal advice in connection with both this lawsuit and coverage issues. (Harrington Aff. ¶¶ 5, 6). *See* E.S. Epstein, *The Attorney–Client Privilege and Work Product Doctrine*, at 31 (4th ed.2001) (stating "[t]he facts establishing the privilege may be raised by affidavit ...."). Mr. Harrington also stated that these communications were made for the explicit purpose of obtaining legal advice. (*Id.*) These statements are uncontradicted. Thus, these documents are privileged and need not be produced.

## IV. CONCLUSION & ORDER

For the reasons detailed herein, Bradley's motion to compel (Docket # 23) is DENIED as to the six documents withheld on the grounds of attorney-client privilege. It is further ORDERED that Amica shall submit the documents designated as either work product or proprietary on its privilege log to the court for *in camera* review by **April 11, 2003**. The court shall issue a supplemental Order addressing those documents and Interrogatory No. 7 after reviewing the documents.

## SUPPLEMENTAL MEMORANDUM OF DECISION AND ORDER ON DEFENDANT'S MOTION TO COMPEL [4]

### I. INTRODUCTION

Plaintiff Amica Mutual Insurance Company ("Amica") brought this diversity subrogation action against defendant W.C. Bradley Company ("Bradley") after Amica indemnified one of its insureds for a house fire allegedly caused by a gas grill manufactured by Bradley. This matter is before the court on Bradley's motion to compel Amica to answer an interrogatory requesting the names of individuals involved in investigating the fire and to produce documents relating to the loss (Docket # 23). Amica has withheld this information claiming work product immunity, attorney-client privilege, or that the information is proprietary and confidential. On April 4, 2003, this court denied Bradley's motion to compel the documents Amica had designated as privileged attorney-client communications and ordered Amica to submit the remaining documents for *in camera* review. Based on this court's review of the challenged documents, Bradley's motion is ALLOWED IN PART and DENIED IN PART. Amica shall produce all the documents for which it has claimed a work-product privilege, except for the 7/21/00 "Internal File Message/Communication with counsel" which this court finds to be a privileged attorney-client communication. In addition, Amica does not need to produce the two documents it has designated as "proprietary" as they are irrelevant to this litigation.

## II. DISCUSSION [5]

### A. The Work Product Doctrine

Bradley seeks several documents Amica designated as being protected by the work product doctrine on the grounds that the documents were generated during a routine claim coverage investigation in the ordinary course of Amica's business. (Def.'s Mem. at 7–8; Def.'s Reply Mem. at 2). Conversely, Amica asserts it knew from the outset that it would pursue this subrogation claim and that all these documents were prepared in anticipation of this litigation. (Pl.'s Opp'n at 2–4). The burden is on the party resisting discovery to establish that the documents are protected work product. *See Sham v. Hyannis Heritage House Hotel, Inc.*, 118 F.R.D. 24,

---

**4.** The parties consented to transfer the case to this court for all purposes, including trial and the entry of final judgment, pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73.

**5.** The facts relevant to the instant motion are detailed in this court's April 4, 2003 opinion and are not repeated here.

25 (D.Mass.1987). This court finds that Amica has not met its burden.

In order to qualify for protection under the work product doctrine, "[t]he material in question must: 1) be a document or tangible thing, 2) which was prepared in anticipation of litigation, and 3) was prepared by or for a party, or by or for its representative." *Id.* (citing, *inter alia,* Fed.R.Civ.P. 26(b)(3)); *accord Hickman v. Taylor,* 329 U.S. 495, 511–12, 67 S.Ct. 385, 393–94, 91 L.Ed. 451 (1947). Coverage investigations by insurance companies are not *per se* conducted in anticipation of litigation, and a determination as to whether documents generated during such investigations were prepared in anticipation of litigation, as opposed to in the ordinary course of business, should be made on a case-by-case basis. *See Sham v. Hyannis Heritage,* 118 F.R.D. at 26, and cases cited. This is because:

> the fact that an allegedly injured person files a claim with an insureds' [sic] insurer does not, of itself, make litigation likely, reasonably probable, or a contingency. It is a fact of common knowledge that an overwhelming majority of claims asserted by parties generally are amicably resolved and that only a very small portion of them rise to the level of disputes, let alone to the level of lawsuits.

*Pasteris v. Robillard,* 121 F.R.D. 18, 21 (D.Mass.1988) (internal citation and quotation omitted).

The present case raises the issue of the applicability of the work product doctrine to materials generated for a dual purpose: determining the cause of the incident for insurance coverage purposes in the regular course of the insurer's business, and preparing for possible litigation which may, in the future, be deemed appropriate. A "dual purpose" document may be protected work product if " 'in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained *because of* the prospect of litigation.' " *State of Me. v. United States Dept. of Interior,* 298 F.3d 60, 68 (1st Cir.2002) (quoting *United States v. Adlman,* 134 F.3d 1194, 1202 (2d Cir.1998) and rejecting "primary purpose" standard which protects only documents prepared "primarily" to assist in litigation) (emphasis in original). Under this standard, "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation" are not protected, even if such documents "aid in the preparation of litigation." *State of Me. v. United States Dept. of Interior,* 298 F.3d at 70 (internal citations and quotation omitted).

### 1. *Applicability of the Work Product Doctrine*

Based on this court's *in camera* review of the documents, and applying these principles, it is ordered that Amica must produce all of the documents for which it claimed a work product privilege, except for one document which is an attorney-client communication. The documents establish that Amica's initial investigation, which included a cause and origin expert as well as a fire expert, was undertaken for the purpose of assessing coverage for the loss. Mr. Harrington's deposition testimony unambiguously states that Amica regularly hired expert consultants during coverage investigations to rule out arson and fraud and, in fact, did so in connection with this claim. (Harrington Dep. (Def.'s Reply Mem. Ex. 1) at 45–46). Thus, Mr. Harrington's testimony reveals that the withheld documents relating to the experts would have been generated even in the absence of any litigation and were not created "because of the prospect of litigation." Moreover, many of the challenged documents reveal that the cause of the fire was unknown and all possibilities were being explored. Under such circumstances, Amica could not be acting in anticipation of litigation, much less litigation against the grill manufacturer. Consequently, except for the one document for which an attorney-client privilege applies, Amica must produce the documents for which it has claimed a work-product privilege.

### B. *Proprietary Information*

Bradley has also moved to compel two groups of documents Amica designated as "proprietary" arguing that Amica has

84

failed to show that the documents warrant such protection. (Def.'s Reply Mem. at 3). Despite withholding these documents and listing them as proprietary on its privilege log, Amica did not address this issue in its opposition memorandum. However, in his affidavit, Mr. Harrington stated that the documents are Amica's confidential internal claims handling guidelines and checklists. (Harrington Aff. ¶ 7). Similarly, at the hearing on this motion, Amica's counsel briefly reiterated this rationale, adding that the documents are irrelevant. This cursory argument is not enough to withhold the documents as proprietary, confidential or trade secrets. *See Foster–Miller, Inc. v. Babcock & Wilcox Canada*, 210 F.3d 1, 8 (1st Cir. 2000) (courts do not clearly distinguish between confidential information, proprietary information, and trade secrets). Nevertheless, the documents sought, which contain Amica's general loss reporting procedures, do not contain any factual information relating to this case, are not "relevant to the claim or defense of any party" nor do they appear "reasonably calculated to lead to the discovery of admissible evidence." Fed. R.Civ.P. 26(b)(1). Thus, these documents need not be produced.

### III. *CONCLUSION & ORDER*

For the reasons detailed herein, Bradley's motion to compel (Docket # 23) is ALLOWED IN PART and DENIED IN PART. It is hereby ORDERED that within fourteen (14) days of the date of this Order, Amica shall:

1. Produce all the documents for which it has asserted the work product privilege, except for the 7/21/00 "Internal File Message/Communication with counsel" which this court finds to be a privileged attorney-client communication.

2. Submit a complete answer to Interrogatory No. 7.