TORRUELLA, Circuit Judge, with whom LIPEZ, Circuit Judge, joins,
Dissenting.
To assist the IRS in its quest to compel taxpayers to reveal their own assessments of their tax returns, the majority abandons our “because of’ test, which asks whether “ ‘in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation.’ ” Maine v. United States Dep’t of the Interior, 298 F.3d 60, 68 (1st Cir.2002) (emphasis in original) (quoting United States v. Adlman, 134 F.3d 1194, 1202 (2d Cir.1998)). The majority purports to follow this test, but never even cites it. Rather, in its place, the majority imposes a “prepared for” test, asking if the documents were “prepared for use in possible litigation.” Maj. Op. at 27. This test is an even narrower variant of the widely rejected “primary motivating purpose” test used in the Fifth Circuit and specifically repudiated by this court. In adopting its test, the majority ignores a tome of precedents from the circuit courts and contravenes much of the principles underlying the work-product doctrine. It also brushes aside the actual text of Rule 26(b)(3), which “[njowhere ... state[s] that a document must have been prepared to aid in the conduct of litigation in order to constitute work product.” Adlman, 134 F.3d at 1198. Further, the majority misrepresents and ignores the findings of the district court. All while purporting to do just the opposite of what it actually does.
I. The Majority Quietly Rejects Circuit Precedent
The majority claims allegiance to our prior decision in Maine, 298 F.3d at 70. Specifically, the majority seizes upon a single line from that decision: “the ‘because of standard does not protect from disclosure ‘documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation.’ ” Id. (quoting Adlman, 134 F.3d at 1202). This qualification is important to be sure, and I will address it infra, Section III.B.2. But I must start by addressing the rest of the Maine decision, which the majority is careful to ignore.
In that decision, Maine sought documents prepared by the Department of the Interior regarding its decision, made during pending related litigation, to classify salmon as a protected species. Id. at 64. The district court found some of these administrative documents unprotected as the Department had not shown that litigation preparation was “ ‘the primary motivating factor for the preparation of the documents.’ ” Id. at 66-67. This formulation of the test for “anticipation of litigation” was based on the Fifth Circuit rule that the work-product doctrine did not protect documents that were “not primarily motivated to assist in future litigation.” United States v. El Paso, 682 F.2d 530, 542-43 (5th Cir.1982) (emphasis added) (citing United States v. Davis, 636 F.2d 1028, 1040 (5th Cir.1981)). On appeal in Maine, we specifically repudiated this test and adopted the broader “because of’ test, which had been thoughtfully and carefully explained by Judge Leval in the Second Circuit decision in Adlman, 134 F.3d at *33 1202-03. See Maine, 298 F.3d at 68 (“In light of the decisions of the Supreme Court, we therefore agree with the formulation of the work-product rule adopted in Adlman and by five other courts of appeals.”).
In the present case, the majority purports to follow Maine, but really conducts a new analysis of the history of the work-product doctrine and concludes that documents must be “ ‘ prepared for any litigation or trial.’ ” Maj. Op. at 29 (emphasis in original) (quoting FTC v. Grolier Inc., 462 U.S. 19, 25, 103 S.Ct. 2209, 76 L.Ed.2d 387 (1983)). Similarly, at another point, the majority suggests that documents must be “for use” in litigation in order to be protected. Id. at 13. Grolier did not establish such a test and the majority can point to no court that has so ruled.[11] Rather, the majority of circuit courts, led by the Second Circuit’s decision in Adlman, have rejected such a rule.
Adlman’s articulation of the “because of’ test is fatal to the majority’s position. In that case, Judge Leval discussed the application of the work-product doctrine “to a litigation analysis prepared by a party or its representative in order to inform a business decision which turns on the party’s assessment of the likely outcome of litigation expected to result from the transaction.” Adlman, 134 F.3d at 1197. In other words, Adlman asked whether the work-product doctrine applies where a dual purpose exists for preparing the legal analysis, that is, where the dual purpose of anticipating litigation and a business purpose co-exist. To answer that question, the Adlman court examined and rejected the “primary purpose” test adopted by the Fifth Circuit in El Paso, 682 F.2d at 542-43, which only grants work-product immunity to workpapers prepared “primarily motivated to assist in future litigation over the return,” id. at 543:
[Protection] is less clear, however, as to documents which, although prepared because of expected litigation, are intended to inform a business decision influenced by the prospects of the litigation. The formulation applied by some courts in determining whether documents are protected by work-product privilege is whether they are prepared “primarily or exclusively to assist in litigation” — a formulation that would potentially exclude documents containing analysis of expected litigation, if their primary, ultimate, or exclusive purpose is to assist in making the business decision. Others ask whether the documents were prepared “because of’ existing or expected litigation — a formulation that would include *34 such documents, despite the fact that their purpose is not to “assist in” litigation. Because we believe that protection of documents of this type is more consistent with both the literal terms and the purposes of the Rule, we adopt the latter formulation.
Adlman, 134 F.3d at 1197-98, quoted in part in Maine, 298 F.3d at 68. And if it needs to be spelled out any more clearly, Adlman makes it explicitly clear that the broader “because of’ formulation is not limited to documents prepared for use in litigation:
We believe that a requirement that documents be produced primarily or exclusively to assist in litigation in order to be protected is at odds with the text and the policies of the Rule. Nowhere does Rule 26(b)(3) state that a document must have been prepared to aid in the conduct of litigation in order to constitute work product, much less primarily or exclusively to aid in litigation. Preparing a document “in anticipation of litigation” is sufficient.
The text of Rule 26(b)(3) does not limit its protection to materials prepared to assist at trial. To the contrary, the text of the Rule clearly sweeps more broadly. It expressly states that work-product privilege applies not only to documents “prepared ... for trial” but also to those prepared “in anticipation of litigation.” If the drafters of the Rule intended to limit its protection to documents made to assist in preparation for litigation, this would have been adequately conveyed by the phrase “prepared ... for trial.” The fact that documents prepared “in anticipation of litigation” were also included confirms that the drafters considered this to be a different, and broader category. Nothing in the Rule states or suggests that documents prepared “in anticipation of litigation” with the purpose of assisting in the making of a business decision do not fall within its scope.
Id. at 1198-99 (emphasis and alterations in original). Rather than confront this language, the majority resorts to simplistic generalizations. Using its novel “prepared for” test, the majority unhelpfully explains that “[ejvery lawyer who tries cases knows the touch and feel of materials prepared for a current or possible ... law suit.” Maj. Op. at 30. Once the majority ignores decades of controlling precedent, the matter becomes so clear that “[n]o one with experience of law suits” could disagree. Id.
I need say little else; the majority’s new “prepared for” rule is blatantly contrary to Adlman, a leading case interpreting the work-product doctrine that we specifically adopted in Maine. The majority’s opinion is simply stunning in its failure to even acknowledge this language and its suggestion that it is respecting rather than overruling Maine.
II. The Majority Announces a Bad Rule
The majority acts as if it is left to this court to draw a line from Hickman to the present case. In so doing, the majority ignores a host of cases which grapple with tough work product questions that go beyond the stuff that “[ejvery lawyer who tries eases” would know is work product. Lower courts deserve more guidance than a simple reassurance that a bare majority of the en banc court knows work product when it sees it.[12] Of course, since this is *35 an en banc proceeding, the majority is free to create a new rule for the circuit— though it would be better if it admitted that it was doing so. But our new circuit rule is not even a good rule.
First, as Judge Leval observed in Adlman, a “prepared for” requirement is not consistent with the plain language of Federal Rule of Civil Procedure 26, which provides protection for documents “prepared in anticipation of litigation or for trial.” Fed.R.Civ.P. 26(b)(3)(A) (emphasis added); see also Adlman, 134 F.3d at 1198-99. There is no reason to believe that “anticipation of litigation” was meant as a synonym for “for trial.” Claudine Pease-Wingenter, Prophetic or Misguided? The Fifth Circuit’s (Increasingly) Unpopular Approach to the Work Product Doctrine, 29 Rev. Litig. (forthcoming 2009) (analyzing and rejecting many of the arguments advanced by the majority in favor of a narrow construction of the phrase “anticipation of litigation”). Since the terms are not synonymous, the term “anticipation of litigation” should not be read out of the rule by requiring a showing that documents be prepared for trial. See Carcieri v. Salazar, — U.S. -, 129 S.Ct. 1058, 1066, 172 L.Ed.2d 791 (2009) (discussing the basic principle that statutes should be construed to give effect to each word).
Second, though the majority goes into some depth describing the foundational case of Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), it misses the fundamental concern of that decision with protecting an attorney’s “privacy, free from unnecessary intrusion by opposing parties and their counsel.” Id. at 510, 67 S.Ct. 385. Without such privacy, litigants would seek unfair advantage by free-riding off another’s work, thus reducing lawyers’ ability to write down their thoughts:
Were the attorney’s work accessible to an adversary, the Hickman court cautioned, “much of what is now put down in writing would remain unwritten” for fear that the attorney’s work would redound to the benefit of the opposing party. Legal advice might be marred by “inefficiency, unfairness and sharp practices,” and the “effect on the legal profession would be demoralizing.” Neither the interests of clients nor the cause of justice would be served, the court observed, if work product were freely discoverable.
Adlman, 134 F.3d at 1197 (quoting Hickman, 329 U.S. at 511, 67 S.Ct. 385) (citations omitted). The majority posits that these rationales do not apply to documents containing a lawyer’s legal analysis of a potential litigation, if that analysis was prepared for a business purpose. Maj. Op. at 30. This is both unpersuasive and directly contrary to the policy analysis in Adlman, which we adopted in Maine. Adlman identified an example of a protected document:
A business entity prepares financial statements to assist its executives, stockholders, prospective investors, business partners, and others in evaluating future courses of action. Financial statements include reserves for projected litigation. The company’s independent auditor requests a memorandum prepared by the company’s attorneys estimating the likelihood of success in litigation and an accompanying analysis of *36 the company’s legal strategies and options to assist it in estimating what should be reserved for litigation losses.
Adlman, 134 F.3d at 1200. Discussing this example, the court concluded that in this scenario “the company involved would require legal analysis that falls squarely within Hickman’s area of primary concern — analysis that candidly discusses the attorney’s litigation strategies, appraisal of likelihood of success, and perhaps the feasibility of reasonable settlement.” Id. Further, there is “no basis for adopting a test under which an attorney’s assessment of the likely outcome of litigation is freely available to his litigation adversary merely because the document was created for a business purpose rather than for litigation assistance.” Id. In .other words,
[i]n addition to the plain language of the Rule, the policies underlying the work-product doctrine suggest strongly that work-product protection should not be denied to a document that analyzes expected litigation merely because it is prepared to assist in a business decision. Framing the inquiry as whether the primary or exclusive purpose of the document was to assist in litigation threatens to deny protection to documents that implicate key concerns underlying the work-product doctrine.
Id. at 1199; see also Roxworthy, 457 F.3d at 595 (stating “the IRS would appear to obtain an unfair advantage by gaining access to KPMG’s detailed legal analysis of the strengths and weaknesses of [the taxpayer’s] position. This factor weighs in favor of recognizing the documents as privileged.”).
The majority offers no response to this sound policy analysis and no reason to doubt that inefficiency and “sharp practices” will result from its new rule allowing discovery of such dual purpose documents, which contain confidential assessments of litigation strategies and chances. Instead of addressing these concerns, the majority’s policy analysis relies instead on case-specific rationales — namely the need to assist the IRS in its difficult task of reviewing Textron’s complex return. See Maj. Op. at 31. Such outcome determinative reasoning is plainly unacceptable. Thus, properly framed, it is clear that the rationales underlying the work-product doctrine apply to documents prepared in anticipation of litigation, even if they are not also for use at trial.[13]
And these policy rationales are squarely implicated in this case. First, Textron’s litigation hazard percentages contain exactly the sort of mental impressions about the case that Hickman sought to protect. In fact, these percentages contain counsel’s ultimate impression of the value of the case. Revealing such impressions would have clear free-riding consequences. With this information, the IRS will be able to immediately identify weak spots and know exactly how much Textron should be willing to spend to settle each item. Indeed, the IRS explicitly admits that this is its purpose in seeking the documents.
Second, as argued to us by amici, the Chamber of Commerce of the United States and the Association of Corporate Counsel, if attorneys who identify good faith questions and uncertainties in their *37 clients’ tax returns know that putting such information in writing will result in discovery by the IRS, they will be more likely to avoid putting it in writing, thus diminishing the quality of representation. The majority dismisses such concerns, concluding that tax accrual workpapers are required by law. Maj. Op. at 30. But the majority fails to cite the record for this conclusion, likely because the majority is simply wrong. As the majority opinion earlier admits, id. at 22-23, the law only requires that Textron prepare audited financial statements reporting total reserves based on contingent tax liabilities. Accounting standards require some evidential support before such statements can be certified, but do not explicitly require the form and detail of the documents prepared here by Textron’s attorneys with respect to each potentially challenged tax item. See also Michelle M. Henkel, Textron: The Debate Continues as to Whether Auditor Transparency Waives the Work Product Privilege, 50 Tax Management Memorandum 251, 260 (2009) (distinguishing auditor’s workpapers and corporate workpapers and explaining that the latter are not mandatory but serve to evaluate a company’s litigation risks). Rather, all that must be actually reported is the final tax reserve liability amount. Thus, as amieii worry, the majority’s new rule will have ramifications that will affect the form and detail of documents attorneys prepare when working to convince auditors of the soundness of a corporation’s reserves.
These concerns are even more clearly implicated in this case because the majority’s decision will remove protection for Textron’s “backup materials” as well as its actual workpapers. The district court found that these materials included “notes and memoranda written by Textron’s in-house tax attorneys reflecting their opinions as to which items should be included on the spreadsheet and the hazard of litigation percentage that should apply to each item.” United States v. Textron Inc., 507 F.Supp.2d 138, 143 (D.R.I.2007). Thus, these documents thus go beyond the numbers used to compute a total reserve. Rather, they explain the legal rationale underpinning Textron’s views of its litigation chances. The majority fails to acknowledge this subtlety, explain why it views such documents as required by regulatory rules, or explain why such mental impressions should go unprotected. Exposing such documentation to discovery is a significant expansion of the IRS’s power and will likely reveal information far beyond the basic numbers that the IRS could discover through production of Textron’s auditor’s workpapers.
But more important are the ramifications beyond this case and beyond even the case of tax accrual workpapers in general. The scope of the work-product doctrine should not depend on what party is asserting it. Rather, the rule announced in this case will, if applied fairly, have wide ramifications that the majority fails to address.
For example, as the IRS explicitly conceded at oral argument, under the majority’s rule one party in a litigation will be able to discover an opposing party’s analysis of the business risks of the instant litigation, including the amount of money set aside in a litigation reserve fund, created in accordance with similar requirements as Textron’s tax reserve fund. Though this consequence was a major concern of the argument in this case, the majority does not even consider this “sharp practice,” which its new rule will surely permit.
And there are plenty more examples. Under the majority’s rule, there is no protection for the kind of documents at issue in Adlman, namely “documents analyzing anticipated litigation, but prepared to as *38 sist in a business decision rather than to assist in the conduct of the litigation.” 134 F.3d at 1201-02. Nearly every major business decision by a public company has a legal dimension that will require such analysis. Corporate attorneys preparing such analyses should now be aware that their work product is not protected in this circuit.
III. The Workpapers Are Protected Under the Right Test
Applying the “because of’ test thoughtfully adopted in Adlman and Maine, the majority should have concluded that Tex-tron’s workpapers are protected by the work-product doctrine. The proper starting point in reaching this legal conclusion should be the factual findings of the district court, which held an evidentiary hearing to understand the nature of the documents sought here by the IRS.
A. Factual findings
After considering affidavits and testimony, the district court found that the tax accrual workpapers are:
1. A spreadsheet that contains:
(a) lists of items on Textron’s tax returns, which, in the opinion of Textron’s counsel, involve issues on which the tax laws are unclear, and, therefore, may be challenged by the IRS;
(b) estimates by Textron’s counsel expressing, in percentage terms, their judgments regarding Textron’s chances of prevailing in any litigation over those issues (the “hazards of litigation percentages”); and
(c) the dollar amounts reserved to reflect the possibility that Textron might not prevail in such litigation (the “tax reserve amounts”).
Textron, 507 F.Supp.2d at 142-143 (emphasis added). These workpapers do not contain any facts about the transactions that concerned the IRS. Id. at 143.
The district court also found, “[a]s stated by Norman Richter, Vice President of Taxes at Textron and Roxanne Cassidy, Director, Tax Reporting at Textron, Tex-tron’s ultimate purpose in preparing the tax accrual workpapers was to ensure that Textron was ‘adequately reserved with respect to any potential disputes or litigation that would happen in the future.’ ” Id. at 143. Further, “there would have been no need to create a reserve in the first place, if Textron had not anticipated a dispute with the IRS that was likely to result in litigation or some other adversarial proceeding.” Id. at 150.
In addition to recognizing these litigation purposes, the district court also recognized the dual purposes driving the creation of these documents and found that the workpapers’ creation “also was prompted, in part” by the need to satisfy Textron’s auditors and get a “clean” opinion letter. Id. at 143. The district court later clarified:
Thus, while it may be accurate to say that the workpapers helped Textron determine what amount should be reserved to cover any potential tax liabilities and that the workpapers were useful in obtaining a “clean” opinion from [the auditor] regarding the adequacy of the reserve amount, there would have been no need to create a reserve in the first place, if Textron had not anticipated a dispute with the IRS that was likely to result in litigation or some other adversarial proceeding.
Id. at 150. Relatedly, the district court found that anticipation of litigation was the “but for” cause of the documents’ creation. Id. Thus, the district court clearly found two purposes leading to the creation of the workpapers.
*39 The majority makes no effort to reject these factual findings, but simply recharacterizes the facts as suits its purposes. For example, the majority declares, without reference to the district court’s more nuanced findings, that the “the IRS is unquestionably right that the immediate motive of Textron in preparing the tax accrual work papers was to fix the amount of the tax reserve on Textron’s books and to obtain a clean financial opinion from its auditor.” Maj. Op. at 27. At another point, the majority boldly pronounces, “the only purpose of Textron’s papers was to prepare financial statements.” Id. at 80. Of course, as explained above, the district court’s factual findings about Textron’s “ultimate purpose” were directly contrary to these pronouncements. Discarding a district court’s factual finding on causation without any demonstration of clear error is not within this court’s proper appellate function. See Fed.R.Civ.P. 52(a) (“Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court’s opportunity to judge the witnesses’ credibility.”); see also Constructora Maza, Inc. v. Banco de Ponce, 616 F.2d 573, 576 (1st Cir.1980) (noting that clear error review applies even when “much of the evidence is documentary and the challenged findings are factual inferences drawn from undisputed facts”).
Instead, the majority exalts in the fact that the district court made no finding that the documents were “for use in possible litigation.” Maj. Op. at 30. That proposition is true. But, as described above, “for use” (i.e. “prepared for”) is not and has never been the law of this circuit.
The majority does suggest that the documents business purpose “cannot be disputed.” Id. This is also uncontroversial. The district court found both a litigation and a business purpose. But, in straining to ignore the documents’ litigation purposes, the majority proceeds to rely heavily on the IRS’s expert. In so doing, the majority makes no effort to explain why the district court should have been required to adopt the view that the workpapers existed only for a non-litigation purpose. The majority claims that Textron’s witnesses agreed with the IRS expert, but the majority fails to reconcile this proclamation with the competing view of Tex-tron’s witnesses, which the district court explicitly relied upon in its factual findings regarding Textron’s “ultimate purpose.” Textron, 507 F.Supp.2d at 143. This is another corruption of the proper role of an appellate court. See Anderson v. Bessemer City, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (“Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be clearly erroneous.”).
The majority does suggest that the district court’s findings regarding the cause of the workpapers’ creation was only stated in its legal analysis section. Maj. Op. at 25. But the actual purpose of the documents’ creators, or, in the words of the district court, “but-for” causation, is a factual issue, and the majority makes no effort to explain why such issue should be reviewed as a legal conclusion.
The majority also proclaims, without record support, that “[a]ny experienced litigator would describe the tax accrual work papers as tax documents and not as case preparation materials.” Id. at 28. As described above, this conclusion reverses, without any finding of clear error, the district court’s factual findings. Further, this language dangerously suggests that this court can, from its general knowledge, offer an expert opinion as to how such documents are always seen by “expe *40 rienced litigators.” Another of the many errors of this approach is revealed by reference to undisputed record testimony. Namely, the majority’s assumption that tax accrual workpapers are a uniform class from corporation to corporation is simply wrong. When the district court carefully and specifically defined what documents were actually at issue in this case, it explained that “there is no immutable definition of the term ‘tax accrual papers,’ ” and that their content varies from case to case, Textron, 507 F.Supp.2d at 142, a conclusion that is consonant with the testimony of the government’s expert. Id. at 142 n. 2. Thus, even were it not our rule that we defer to the district court’s factfinding, such a rule would make good sense in handling the wide range of workpapers likely to confront district courts in the future as the IRS increasingly seeks their discovery.
Even if we looked at the purpose of tax accrual workpapers as a general matter, the district court’s conclusion that Tex-tron’s anticipation of litigation drove its reporting obligations is not so outrageous as to leave us with a firm conviction of error. Rather, other courts reviewing similar kinds of documents have reached similar conclusions. Regions Fin. Corp. & Subsidiaries v. United States, No. 2:06-CV-00895-RDP, 2008 WL 2139008, at *6 (N.D.Ala. May 8, 2008) (concluding, in examining another company’s workpapers that “[w]ere it not for anticipated litigation, Regions would not have to worry about contingent liabilities and would have no need to elicit opinions regarding the likely results of litigation”); Comm’r of Revenue v. Comcast Corp., 453 Mass. 293, 901 N.E.2d 1185, 1191, 1205 (2009) (affirming a finding of work-product protection for a business memorandum analyzing the “pros and cons of the various planning opportunities and the attendant litigation risks” since the author “had ‘the prospect of litigation in mind when it directed the preparation of the memorandum’ ” and would not have been prepared irrespective of that litigation (quoting Adlman, 134 F.3d at 1204)).
B. Analysis
This court should accept the district court’s factual conclusion that Textron created these documents for the purpose of assessing its chances of prevailing in potential litigation over its tax return in order to assess risks and reserve funds. Under these facts, work-product protection should apply.
1. The “because of’ test
First, the majority does not develop any analysis contesting the proposition that disputes with the IRS in an audit can constitute litigation, within the meaning of Fed.R.Civ.P. 26(b)(3)(A). Indeed, such a conclusion is clear. For these purposes, the touchstone of “litigation” is that it is adversarial. See Restatement (Third) of the Law Governing Lawyers § 87 cmt. h(2000). Though the initial stages of a tax audit may not be adversarial, the disputes themselves are essentially adversarial; the subject of these disputes will become the subject of litigation unless the dispute is resolved.
Applying the “because of’ test as articulated in Adhnan and Maine, the workpapers are protected. Under these precedents, a document is protected if, “ ‘in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation.’ ” Maine, 298 F.3d at 68 (emphasis in original) (quoting Adlman, 134 F.3d at 1202). The “because of’ test “really turns on whether [the document] would have been prepared irrespective of *41 the expected litigation with the IRS.” Adlman, 134 F.3d at 1204. As the district court found, the driving force behind the preparation of the documents was the need to reserve money in anticipation of disputes with the IRS. Textron, 507 F.Supp.2d at 143. Though other business needs also contributed to Textron’s need to create the documents, those needs depended on Textron’s anticipating litigation with the IRS. In other words, without the anticipation of litigation, there would be no need to estimate a reserve to fund payment of tax disputes. Id. at 150. In this way, the dual purposes leading to the documents’ creation were intertwined, and work-product protection should apply. See In re Grand Jury Subpoena, 357 F.3d at 910 (“The documents are entitled to work product protection because, taking into account the facts surrounding their creation, their litigation purpose so permeates any non-litigation purpose that the two purposes cannot be discretely separated from the factual nexus as a whole.”); see also Andrew Golodny, Note: Lawyers versus Auditors: Disclosure to Auditors and Potential Waiver of Workr-Product Privilege in United States v. Textron, 61 Tax Law. 621, 629 (2008) (“As a commentator noted, ‘in the case of tax contingency reserves, the prospect of future litigation and the business need for the documents are so intertwined that the prospect of future litigation itself creates the business need for the document.’ ” (quoting Terrence G. Perris, Court Applies Work, Product Privilege to Tax Accrual Workpapers, 80 Prac. Tax. Strategies 4 (2008))).
The majority simply refuses to accept the district court’s finding that the documents would not exist but for Textron’s need to anticipate litigation. This rejection is essential to the majority’s erroneous conclusion. Accepting the district court’s findings regarding purpose compels a finding of work-product protection, since the precedents are clear that under the “because of’ test, dual purpose documents are protected. In fact, that is one of the very reasons some courts have adopted the test. 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure, § 2024 (2d ed. 2009) (“ ‘Dual purpose’ documents created because of the prospect of litigation are protected even though they were also prepared for a business purpose.”); see also Roxworthy, 457 F.3d at 598-99 (“[Documents do not lose their work product privilege ‘merely because [they were] created in order to assist with a business decision,’ unless the documents ‘would have been created in essentially similar form irrespective of the litigation.’” (quoting Adlman, 134 F.3d at 1202)); In re Grand Jury Subpoena, 357 F.3d at 907 (adopting Wright and Miller’s “because of’ test in order to handle “dual purpose” documents); Maine, 298 F.3d at 68 (adopting Adlman after recounting the distinction between the “because of’ test and the “primary purpose” test in their handling of dual purpose documents); Adlman, 134 F.3d at 1197-98, 1202 (“Where a document is created because of the prospect of litigation, analyzing the likely outcome of that litigation, it does not lose protection under this formulation merely because it is created in order to assist with a business decision.”); In re Special Sept. 1978 Grand Jury (II), 640 F.2d 49, 61 (7th Cir.1980) (“We conclude that the materials ... were indeed prepared in anticipation of litigation, even though they were prepared as well for the filing of the Board of Elections reports.”).
2. The exception to the “because of’ test
The majority reads too much into one sentence from Maine and Adlman. Specifically, it is true that “the ‘because of standard does not protect from disclosure *42 ‘documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation.’ ” Maine, 298 F.3d at 70 (quoting Adlman, 134 F.3d at 1202). This proviso relates to the advisory notes to the rule, which excludes from protection “[mjaterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes.” Fed. R.Civ.P. 26 advisory committee’s note (1970). Understood in light of the fact that the “because of’ test unequivocally protects “dual purpose” documents, this proviso does not strip protection for dual purpose documents that have one business or regulatory purpose. Rather, the best reading of the advisory committee’s note is simply that preparation for business or for public requirements is preparation for a nonlitigation purpose insufficient in itself to warrant protection. The note states that there is no protection for documents created for business, regulatory, or “other nonlitigation purposes.” This language suggests the note is considering business and regulatory purposes as nonlitigation purposes, but does not suggest that the presence of such a purpose should somehow override a litigation purpose, should one exist. Thus, correctly formulated, this exception should be understood as simply clarifying the rule that dual purpose documents are protected, though “there is no work-product immunity for documents prepared in the regular course of business rather than for purposes of the litigation.” Charles A. Wright & Arthur R. Miller, supra, § 2024 (emphasis added); see also Roxworthy, 457 F.3d at 599 (“[A] document can be created for both use in the ordinary course of business and in anticipation of litigation without losing its work-product privilege.”). Under the majority’s interpretation, the exception swallows the rule protecting dual purpose documents.
So understood, the exception does not control this case. After citing this exception, the district court concluded that the documents were not created irrespective of litigation because Textron would not have prepared the documents but for the anticipation of litigation. Textron, 507 F.Supp.2d at 150. The majority makes no effort to label this finding clearly erroneous. To the contrary, the finding is correct. The tax accrual workpapers identify specific tax line items, and then anticipate the likelihood that litigation over those items will result in Textron having to pay the IRS more money. That Textron will not ultimately litigate each position does not change the fact that when it prepared the documents, Textron was acting to anticipate and analyze the consequences of possible litigation, just like the memorandum example in Adlman, 134 F.3d at 1200. The documents would not be the same at all had Textron not anticipated litigation. So, under the “because of’ test, as applied in Adlman and the many circuit courts that have followed it, these documents were not prepared “irrespective” of the prospect of litigation. They should be protected.
3. Arthur Young and El Paso do not control
Neither the Supreme Court’s decision in United States v. Arthur Young & Co., 465 U.S. 805, 104 S.Ct. 1495, 79 L.Ed.2d 826 (1984), nor the Fifth Circuit’s decision in El Paso, 682 F.2d at 530, support a different result.
In Arthur Young, the Court declined to recognize an accountant’s work-product doctrine, thus holding that tax accrual workpapers created by an independent auditor were not protected. Arthur Young, 465 U.S. at 815-21, 104 S.Ct. 1495. But unlike the Court in Arthur Young, we are not now confronted with the question of *43 whether to recognize a new privilege. Here, the doctrinal decision we face is how to apply existing work-product doctrine to the present facts, in other words whether the “because of’ test protects dual purpose documents, as the Maine and Adlman courts so held. This question was not at all presented in Arthur Young.
On the other hand, El Paso is clearly factually on point — there the Fifth circuit rejected work-product protection for similar tax accrual workpapers. El Paso, 682 F.2d at 542. But, as explained above, that court applied a different definition of the work-product doctrine, asking whether the “primary motivating purpose behind the creation of the document was to aid in possible future litigation.” Id. at 542-44 (concluding that the document should not be protected as it “carries much more the aura of daily business than it does of courtroom combat”). Finding Textron’s work-papers protected would not create a circuit split, but be merely an application of a widely acknowledged existing difference between our law and the law of the Fifth Circuit. It is precisely in these “dual purpose” situations that the “because of’ test used in this circuit is meant to distinguish itself from the “primary purpose” test used in the Fifth Circuit. Maine, 298 F.3d at 68 (citing Adlman for the proposition that the primary purpose test “is at odds with the text and the policies of Rule 26 because nothing in it suggests that documents prepared for dual purposes of litigation and business or agency decisions do not fall within its scope”). Thus, unlike the Fifth Circuit, we need not assess whether the tax accrual workpapers carry more of one “aura” than another.
IY. Conclusion
The majority’s decision may please the IRS and some tax scholars who understandably see discovery of tax accrual workpapers as an important tool in combating fraud. But this decision will be viewed as a dangerous aberration in the law of a well-established and important evidentiary doctrine. Whatever else one may think about this case, the majority’s assertion that it is following Maine is plainly erroneous. Rather, the majority’s “prepared for” test is directly contrary to Adlman, a decision we explicitly adopted in Maine.
In straining to craft a rule favorable to the IRS as a matter of tax law, the majority has thrown the law of work-product protection into disarray. Circuits have already split interpreting the meaning of “anticipation of litigation,” between the “primary purpose” and “because of’ tests. Now this court has proceeded to further the split by purporting to apply the “because of’ test while rejecting that test’s protection for dual purpose documents. In reality, the majority applied a new test that requires that documents be actually “prepared for” use in litigation. The time is ripe for the Supreme Court to intervene and set the circuits straight on this issue which is essential to the daily practice of litigators across the country.
The correct test is that spelled out in Adlman, and adopted by most circuit courts. Applying that test to the facts actually found by the district court, these tax accrual workpapers should be protected. For these reasons, I respectfully dissent.

. To support its conclusion, the majority commits a plain logical error. The majority states that work-product protection must not be judged solely on its subject matter, but rather whether the documents's purpose is for use in litigation. In support of this proposition, the majority cites a number of cases that propound the uncontroversial proposition that a document must be judged according to its purpose, not solely its content. Maj. Op. at 29 n. 8. But those cases do not establish the majority's rule that the documents’ purpose must be limited to use in litigation. Rather, one of the cases the majority cites adopts the test that the document must have been created "because of” litigation, which, as Adlman describes, is antithetical to the majority's new requirement. United States v. Roxworthy, 457 F.3d 590, 593-94 (6th Cir.2006) (adopting Adlman's "because of” test). Another of the majority’s citations is from the D.C. Circuit, which has also since adopted the "because of” test. Senate of Puerto Rico v. United States Dep’t of Justice, 823 F.2d 574, 587 n. 42 (D.C.Cir.1987). The final decision cited by the majority, from the Northern District of California, deals with the deliberative process privilege, not the work-product doctrine. Church of Scientology Int’l v. IRS, 845 F.Supp. 714, 723 (C.D.Cal.1993). In any event, the Ninth Circuit also applies the "because of” test. In re Grand Jury Subpoena, 357 F.3d 900, 907-08 (9th Cir.2004) (praising and following Adlman).

. This test is reminiscent of Justice Stewart’s famously unhelpful test for identifying obscenity:
[C]riminal laws in this area are constitutionally limited to hard-core pornography. I shall not today attempt further to define *35 the kinds of material I understand to be embraced within that shorthand description; and perhaps I could never succeed in intelligibly doing so. But I know it when I see it, and the motion picture involved in this case is not that. Jacobellis v. Ohio, 378 U.S. 184, 197, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964) (Stewart, J., concurring).

. Perhaps because of these very same concerns about privacy and fairness, the IRS itself argued for the protection of its documents prepared for the dual purposes of helping the IRS understand the litigation risks that might result if the IRS made the administrative decision to adopt a new program. Delaney, Migdail & Young, Chartered v. IRS, 826 F.2d 124 (D.C.Cir.1987). This point was also noted by the Adlman court when it observed that "the IRS successfully argued against the very position it here advocates.” Adlman, 134 F.3d at 1201.